**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

FRANK O. LOHER,
    *Petitioner-Appellee*,

v.

TODD THOMAS,
    *Respondent-Appellant.*

No. 14-16147

D.C. No.
1:11-cv-00731-LEK-KSC

OPINION

Appeal from the United States District Court
for the District of Hawaii
Leslie E. Kobayashi, District Judge, Presiding

Argued and Submitted October 13, 2015
Honolulu, Hawaii

Filed June 17, 2016

Before: Diarmuid F. O'Scannlain, Richard C. Tallman,
and Milan D. Smith, Jr., Circuit Judges.

Opinion by Judge O'Scannlain;
Partial Concurrence and Partial Dissent by Judge Tallman;
Partial Concurrence and Partial Dissent by Judge
Milan D. Smith, Jr.

## SUMMARY[*]

### Habeas Corpus

The panel affirmed in part and reversed in part the district court's judgment granting Frank Loher's habeas corpus petition challenging his Hawaii state conviction and sentence for attempted sexual assault, and remanded with instructions.

The district court granted the writ on all three of Loher's claims: (1) that the trial court violated Loher's constitutional rights by forcing him to testify; (2) that Loher's appellate counsel rendered ineffective assistance for failing to raise the forced testimony issue; and (3) that the enhancement of his sentence based on judge-found facts violated *Apprendi v. New Jersey*, 530 U.S. 466 (2000).

The panel held that the Hawaii Intermediate Court of Appeals' (Hawaii ICA's) rejection of Loher's claim under *Brooks v. Tennessee*, 406 U.S. 605 (1972), that he was forced to testify in violation of his rights to remain silent and to due process, was not objectively unreasonable.

The panel held that the trial court's creation, on remand from the Hawaii ICA, of a post-conviction record on Loher's ineffective-assistance-of-appellate-counsel (IAAC) claims, and the Hawaii ICA's reliance on the post-conviction record, were not objectively unreasonable under 28 U.S.C. § 2254(d)(1) and 2254(d)(2).

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

The panel held that Hawaii waived its challenge to the district court's grant of relief for ineffective assistance of appellate counsel, and waived its challenge to Loher's *Apprendi* claim.

The panel remanded to the district court with instructions to modify its conditional writ to require Hawaii to release Loher or to provide him with resentencing within a reasonable period of time. The panel wrote that the district court should consider what additional condition is required to remedy the ineffective assistance of Loher's appellate counsel.

Judge Tallman concurred in part and dissented in part. He dissented from the part of Judge O'Scannlain's opinion which declares that Hawaii has waived its challenge to the grant of habeas relief on Loher's IAAC claim and suggesting that the district court order a new direct appeal to reconsider the *Brooks* and IAAC claims already decided against Loher by the Hawaiian appellate courts. He disagreed with Judge M. Smith's conclusion that the state court's construction of *Brooks* was objectively unreasonable under § 2254(d).

Judge M. Smith concurred in part and dissented in part. He concurred in the majority's holding that the government has waived its challenges to Loher's IAAC and *Apprendi* claims, as well as in the majority's proposed remedy for those violations. He disagreed with the majority's rejection of Loher's *Brooks* claims, and would hold instead that the state court's denial of relief was "contrary to, or an unreasonable application" of the Supreme Court's holding in *Brooks*.

## COUNSEL

Brian R. Vincent, Deputy Prosecuting Attorney, Honolulu, Hawaii, for Respondent-Appellant.

Peter C. Wolff, Jr., Federal Public Defender, Honolulu, Hawaii, Petitioner-Appellee.

## OPINION

O'SCANNLAIN, Circuit Judge:

We must decide whether a state appellate court unreasonably applied Supreme Court precedent in upholding a conviction and resulting sentence against a claim that the petitioner was forced to testify in violation of his rights to remain silent and to due process.

I

Petitioner Frank O. Loher was convicted in Hawaii state court of attempted sexual assault and given an extended-term sentence, all of which was affirmed on appeal.[1] He subsequently filed this petition for a writ of habeas corpus in federal district court. Because his claims relate to matters of

---

[1] The facts are from the record and various court opinions, including: *State v. Loher*, No. 24489, 2003 WL 1950475 (Haw. Ct. App. Apr. 21, 2003) (*Loher I*); *State v. Loher*, No. 26000, 2005 WL 335234, at *3 (Haw. Ct. App. Feb. 11, 2005) (*Loher II*); *Loher v. State*, 193 P.3d 438, 455 (Haw. Ct. App. 2008) (*Loher III*); *Loher v. State*, No. 29818, 2011 WL 2132828 (Haw. Ct. App. May 31, 2011) (*Loher IV*); *Loher v. Thomas*, Civ. No. 11-00731, 2013 WL 8561780 (D. Haw. Oct. 2, 2013) (*Loher V*); *Loher v. Thomas*, 23 F. Supp. 3d 1182 (D. Haw. 2014) (*Loher VI*).

trial procedure, the trial proceedings must be set out in great detail.

A

On November 14, 2000, Loher's trial in Hawaii circuit court began at 9:06 a.m., and the State's first witness took the stand at approximately 9:30 a.m. The prosecution presented four witnesses and then rested at around 2:15 p.m. The court recessed until about 2:30 p.m. At that point, Loher's trial counsel, Neal Kugiya, requested a continuance to November 16, the following trial day, because none of Loher's witnesses was present in court. Kugiya argued that he had not anticipated that the prosecution's case would "finish this early . . . because they have quite a number of people on the witness list," and that he had attempted during the break to get witnesses to come to court, unsuccessfully. The trial court denied the request and the following exchange occurred between the court, Kugiya, and the prosecutor, Thalia Murphy:

> THE COURT: Under Rule 611 the Court has discretion to exercise control over the mode and order of interrogation. What the Court is going to do because there's more than enough time left in the day,[2] we're going to continue with the trial. I'm going to allow the defense to call [Loher] to testify, then after he completes testifying, he can call whatever witnesses that's on call that may arrive today. We can continue with that, and then we can

---

[2] Trial days appear to last until 4:30 p.m.

call the remaining witnesses on Thursday morning.

KUGIYA: Okay. Well, I need to note my objection to that, Your Honor, because [Loher] does have a right not to testify, and based on testimony of other witnesses, there may not be a need for him to testify if we can get everything we need across from the other people.

So in this vein the Court is actually forcing him to take the stand because now we have nobody to call, and you're saying, Well, we can call [Loher], but as a strategic manner in planning for our case, he was going to be the last witness I call, and depending how it went with the other witnesses, we may not need to call him because we can get everything that we need through the other witnesses.

So, in fact, now that we're being forced to call him as first witness in a sense is prejudicial to [Loher] because he's being forced to testify when he, in essence, we had not decided fully whether or not he would testify for sure.

THE COURT: The Court does not find the argument persuasive. The Court believes that it was the responsibility or is the responsibility of counsel to determine when witnesses would be available.

Defense counsel was free to discuss with the State the witnesses called and when they would anticipate finishing their case.

Defense counsel has hopefully prepared for this case, so should be aware at the present time what the witnesses that he intends to call will testify. And having prepared and having a knowledge as to what they will say, since they are the defense witnesses, then they should be in the position to know whether the defendant should testify.

So the Court believes it is not persuasive that defense counsel should now argue to this Court, after the Court had denied his request to delay the trial till Thursday by saying that he does not know what his own witnesses will say and depending what they say, he will then make the decision whether his client's going to testify.

The Court would also note that during the pretrial conferences, as well as in the opening statement, the defendant has asserted an alibi that he was not present at the time, and that where the—his location would be during certain times defense counsel has also represented to the Court that his client is going to testify.

The Court is not persuaded by his argument and is concerned that this may be

manipulative in order to obtain the relief that the Court had not granted.

. . .

KUGIYA: Well, if I can respond.

THE COURT: Excuse me, and the Court is unpersuaded by your argument. So we're going to proceed. You may call your client to testify, or if you wish, not to testify or engage in *Tachibana*[3] at this time, and he may waive his testimony. That is between you and your client.

So I'm going to take a recess, and before we do that, is your client going to testify or is he going to waive his right to testify?

KUGIYA: I'd like to discuss that matter with him.

MURPHY: I can leave the courtroom so that they can remain here.

KUGIYA: Your Honor, if I can just say we're not trying to delay this trial in any way. It's just that it was my understanding from

---

[3] In *Tachibana v. State*, the Hawaii Supreme Court held that, in every criminal case where the defendant does not testify, the trial court must engage in a colloquy with the defendant, advising him of his constitutional right to testify, and obtaining an on-the-record waiver of that right. *See* 900 P.2d 1293, 1303 (Haw. 1995).

conversations that the State would probably, you know, run the whole day. And so, you know, try not to inconvenience witnesses. I don't want them coming around today on Tuesday, knowing that we wouldn't get to them.

It was my understanding that we would not start our case until Thursday, and that's why I indicated to them that we would probably start Thursday morning.

THE COURT: I understand what you're saying.

KUGIYA: It's not for any purpose of delay. . . .

THE COURT: Court will stand in recess.

After the recess, Loher testified beginning at 2:45 p.m. During cross-examination, prosecutor Murphy elicited damaging testimony from Loher.

After the trial concluded on November 16, the jury found Loher guilty of attempted sexual assault but acquitted him of attempted kidnapping. After trial, Kugiya moved to withdraw as counsel because Loher had filed a complaint against him with the Hawaii Office of Disciplinary Counsel. Randal I. Shintani was appointed as Loher's counsel and represented Loher in his sentencing hearing. Following such hearing, the circuit court granted the prosecutor's motion for an extended term of imprisonment, finding that Loher was a persistent offender under Hawaii Revised Statutes § 706–662(1).

B

With Shintani's assistance, Loher appealed to the Hawaii Intermediate Court of Appeals ("ICA"), claiming there was insufficient evidence to convict him, ineffective assistance of trial counsel, instructional error, and sentencing error. The Hawaii ICA affirmed Loher's conviction and sentence in *Loher I*.

C

Loher then filed a pro se post-conviction motion in Hawaii circuit court pursuant to Hawaii Rule of Penal Procedure 35 (2002) ("Rule 35 Motion"), arguing in part that *Apprendi v. New Jersey*, 530 U.S. 466 (2000), and its progeny required that a jury—rather than the court—find the facts necessary to impose his extended sentence. After the circuit court denied the motion, Loher appealed, and the Hawaii ICA affirmed in *Loher II*.

D

Next, Loher filed a pro se post-conviction petition, also in Hawaii circuit court, under Hawaii Rule of Penal Procedure 40 ("Rule 40 Petition") in which he raised dozens of claims. After the trial judge rejected Loher's claims without a hearing, Loher appealed, again pro se. Although Loher's briefing did not clearly set forth his claims, the Hawaii ICA addressed his arguments to the extent it understood them. In *Loher III*, it construed Loher's petition as claiming that the trial court violated his constitutional rights by forcing him to testify and that Loher's appellate counsel rendered ineffective assistance by failing to raise the "forced testimony" issue in Loher's direct appeal. The court remanded for a hearing on

Loher's ineffective assistance of appellate counsel ("IAAC") claim.

On remand, the circuit court reviewing the Rule 40 petition ("Rule 40 court") heard testimony from appellate counsel Shintani, Loher, and trial counsel Kugiya. The Rule 40 court received into evidence the trial transcript and Shintani's opening brief on appeal. After considering both the trial record and the record developed on remand, the Rule 40 court issued findings of fact and conclusions of law. It concluded that the trial court did not violate Loher's constitutional rights and that, therefore, Shintani's failure to raise the forced testimony issue did not constitute ineffective assistance of appellate counsel.

On appeal, the Hawaii ICA affirmed the Rule 40 court's decision in a reasoned opinion in *Loher IV.*

E

In due course, Loher filed a petition for a writ of habeas corpus in the federal district court. Upon review of a magistrate judge's findings and recommendations in *Loher V*, the district court in *Loher VI* granted the writ on all three of Loher's claims: (1) that the trial court violated Loher's constitutional rights by forcing him to testify; (2) that Loher's appellate counsel rendered ineffective assistance for failing to raise the forced testimony issue; and (3) that the enhancement of his sentence based on judge-found facts violated *Apprendi*. *Loher VI*, 23 F. Supp. 3d at 1186, 1200. Having granted relief on all three grounds, the district court ordered Hawaii to release or to retry Loher. *Id.* at 1200–01. It then stayed that order pending this appeal, which was timely filed.

## II

### A

We have jurisdiction under 28 U.S.C. §§ 1291 and 2253(a) and "review de novo the district court's grant of a § 2254 habeas petition." *Wilkinson v. Gingrich*, 806 F.3d 511, 515–16 (9th Cir. 2015) (as amended) (citing *Doody v. Ryan*, 649 F.3d 986, 1001 (9th Cir. 2011) (en banc)). We review the district court's determination of the appropriate remedy for a constitutional violation on a habeas petition for abuse of discretion. *Chioino v. Kernan*, 581 F.3d 1182, 1184 (9th Cir. 2009).

### B

A state prisoner's habeas petition "shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."

28 U.S.C. § 2254(d). "This is a 'difficult to meet' and 'highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the

doubt.'" *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (quoting *Harrington v. Richter*, 562 U.S. 86, 102 (2011); *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (per curiam)).

1

The "'contrary to' and 'unreasonable application of' clauses in § 2254(d)(1) are distinct and have separate meanings." *Moses v. Payne*, 555 F.3d 742, 751 (9th Cir. 2009) (citing *Lockyer v. Andrade*, 538 U.S. 63, 73–75 (2003)). Under the "contrary to" clause of § 2254(d)(1), a federal court may grant relief only when "the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 413 (2000).

Under the "unreasonable application" clause of § 2254(d)(1), "a state-court decision involves an unreasonable application of [the Supreme Court's] precedent if the state court identifies the correct governing legal rule . . . but unreasonably applies it to the facts of the particular state prisoner's case." *White v. Woodall*, 134 S. Ct. 1697, 1705 (2014) (quoting *Williams*, 529 U.S. at 407–08). "And an 'unreasonable application of' [the Supreme Court's] holdings must be objectively unreasonable, not merely wrong; even clear error will not suffice." *Woods v. Donald*, 135 S. Ct. 1372, 1376 (2015) (per curiam) (quoting *Woodall*, 134 S. Ct. at 1702). "To satisfy this high bar, a habeas petitioner is required to 'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in

existing law beyond any possibility for fairminded disagreement.'" *Id*. (quoting *Richter*, 562 U.S. at 103).

Importantly, a state court does not unreasonably *apply* the Supreme Court's holdings by refusing to *extend* a legal principle to a new context. *See Woodall*, 134 S. Ct. at 1706. While the "difference between applying a rule and extending it is not always clear, . . . [t]he critical point is that relief is available under § 2254(d)(1)'s unreasonable-application clause if, and only if, it is so obvious that a clearly established rule applies to a given set of facts that there could be no 'fairminded disagreement' on the question." *Id.* at 1706–07 (citations omitted).

2

Under § 2254(d)(2), fact-based challenges "fall into two main categories." *Hibbler v. Benedetti*, 693 F.3d 1140, 1146 (9th Cir. 2012). "First, a petitioner may challenge the substance of the state court's findings and attempt to show that those findings were not supported by substantial evidence in the state court record." *Id.* (citing *Taylor v. Maddox*, 366 F.3d 992, 999–1000 (9th Cir. 2004)). "Second, a petitioner may challenge the fact-finding process itself on the ground that it was deficient in some material way." *Id.* (citing *Taylor*, 366 F.3d at 999, 1001).

A state-court decision "will not be overturned on factual grounds unless *objectively* unreasonable in light of the evidence presented in the state-court proceeding." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003) (emphasis added). "While 'not impossible to meet,' that is a 'daunting standard—one that will be satisfied in relatively few cases,' especially because we must be 'particularly deferential to our

state-court colleagues.'" *Hernandez v. Holland*, 750 F.3d 843, 857 (9th Cir. 2014) (quoting *Taylor*, 366 F.3d at 1000). Thus, a "state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen*, 558 U.S. 290, 301 (2010). And we "may not second-guess a state court's fact-finding process unless, after review of the state-court record," we determine "that the state court was not merely wrong, but actually unreasonable." *Taylor*, 366 F.3d at 999.

Thus, when "a petitioner challenges the substance of the state court's [factual] findings, 'it is not enough that we would reverse in similar circumstances if this were an appeal from a district court decision. Rather, we must be convinced that an appellate panel, applying the normal standards of appellate review, could not reasonably conclude that the finding is supported by the record.'" *Hibbler*, 693 F.3d at 1146 (quoting *Taylor*, 366 F.3d at 1000). And when a petitioner challenges "the state court's procedure, mere doubt as to the adequacy of the state court's findings of fact is insufficient; we must be satisfied that *any* appellate court to whom the defect in the state court's fact-finding process is pointed out would be unreasonable in holding that the state court's fact-finding process was adequate." *Id.* at 1146–47 (internal quotation marks and alterations omitted).

C

When reviewing a habeas petition, "we look to 'the last reasoned state-court decision.'" *Miller v. Blacketter*, 525 F.3d 890, 894 n.2 (9th Cir. 2008) (quoting *Van Lynn v. Farmon*, 347 F.3d 735, 738 (9th Cir. 2003)). Here, the last

reasoned state court decision is the unpublished, post-remand decision of the Hawaii ICA, *Loher IV*.

### III

### A

Loher first argues that the Hawaii ICA's rejection of his "forced testimony" claim involved an unreasonable application of *Brooks v. Tennessee*, 406 U.S. 605 (1972).

### 1

In *Brooks*, the Supreme Court held that a Tennessee statute, which required a criminal defendant to testify before any of his witnesses, violated the defendant's rights to remain silent and to due process. *See* 406 U.S. at 610–13. It reasoned that the "defendant's choice to take the stand carries with it serious risks of impeachment and cross-examination; it 'may open the door to otherwise inadmissible evidence which is damaging to his case.'" *Id.* at 609 (quoting *McGautha v. California*, 402 U.S. 183, 213 (1971)). Since a defendant cannot be certain of what his witnesses will say, he "may not know at the close of the State's case whether his own testimony will be necessary or even helpful to his cause." *Id.* at 610. "Rather than risk the dangers of taking the stand, he might prefer to remain silent at that point, putting off his testimony until its value can be realistically assessed." *Id.* Keeping the defendant "off the stand entirely unless he chooses to testify first . . . casts a heavy burden on a defendant's otherwise unconditional right not to take the stand." *Id.* at 610–11 (footnote omitted). The Court held that the Tennessee statute violated "an accused's constitutional

right to remain silent insofar as it require[d] him to testify first for the defense or not at all." *Id.* at 612.

The *Brooks* Court also concluded that the statute violated the defendant's right to due process. It explained,

> Whether the defendant is to testify is an important tactical decision as well as a matter of constitutional right. By requiring the accused and his lawyer to make that choice without an opportunity to evaluate the actual worth of their evidence, the statute restricts the defense—particularly counsel—in the planning of its case. Furthermore, the penalty for not testifying first is to keep the defendant off the stand entirely, even though as a matter of professional judgment his lawyer might want to call him later in the trial. The accused is thereby deprived of the 'guiding hand of counsel' in the timing of this critical element of his defense. While nothing we say here otherwise curtails in any way the ordinary power of a trial judge to set the order of proof, the accused and his counsel may not be restricted in deciding whether, and when in the course of presenting his defense, the accused should take the stand.

*Id.* at 612–13.

2

In *Loher IV*, the Hawaii ICA reviewed two of its prior decisions applying *Brooks* to a trial court's ruling that a

defendant testify first or not at all: *State v. Kido*, 76 P.3d 612 (Haw. Ct. App. 2003), and *State v. Sale*, 133 P.3d 815 (Haw. Ct. App. 2006). *Loher IV*, 2011 WL 2132828, at *4, *6–8.

In *Kido*, the defendant wanted to call a witness who was in the same courthouse, but was occupied in a different hearing. *See* 76 P.3d at 614–15. When the witness was not immediately available, the trial court required the defense to call the only witness present, the defendant. *Id.* at 615. On appeal, the Hawaii ICA identified several situations in which courts had held that no *Brooks* violation occurred, including "where the defendant's decision whether to testify congealed before the trial court's action[] and/or . . . where the defendant himself created the exigency for taking his testimony first." *Id.* at 619 (citations omitted).[4]

In *Loher IV*, the Hawaii ICA noted such "generally-recognized exceptions" to *Brooks* and then upheld the Rule 40 court's factual findings and legal conclusion that both of the exceptions applied in Loher's case. *Loher IV*, 2011 WL 2132828, at *7–10 (quoting *Loher III*, 193 P.3d at 449 n.6 (citing *Kido*, 76 P.3d at 619)). Specifically, it affirmed the findings that Loher had decided "to take the stand no matter what" before the trial court required him to testify immediately or not at all; that delay from a continuance would not have been "trifling"; and that defense witnesses were not present the first day of trial because Loher's counsel failed to confer with the prosecution about the length of its

---

[4] However, the Hawaii ICA concluded that those "exceptions" to *Brooks* did not apply in Kido's case. *Id.* at 619–20. The court reversed and remanded for a new trial. *Id.* at 622–23. In *Sale*, the Hawaii ICA distinguished *Kido* and held that the trial court did not violate *Brooks*. *Sale*, 133 P.3d at 826–27.

case and erred in estimating the same.  *Id.* at \*9–10.  Given
these findings, the Hawaii ICA concluded that the trial court
had not violated *Brooks*.  *Id.* at \*10.

3

A "state court's determination that a claim lacks merit
precludes federal habeas relief so long as 'fairminded jurists
could disagree' on the correctness of the state court's
decision." *Woods v. Etherton*, 136 S. Ct. 1149, 1151 (2016)
(per curiam) (quoting *Richter*, 562 U.S. at 101).  Such
disagreement is possible here for at least three reasons.

First, *Brooks* itself addressed a blanket statutory
requirement that a defendant testify before his other
witnesses, regardless of whether such witnesses were
available.  It did not address a trial court's extemporaneous
denial of a continuance, sought in order to procure defense
witnesses, where the defendant was responsible for the
absence of such witnesses.  Thus, the Hawaii ICA had to
consider how the principles announced in *Brooks* applied to
different facts.  Extending *Brooks* to this new context
involves interpretation and reasoning over which fairminded
jurists could disagree.  *See Woodall*, 134 S. Ct. at 1706–07.

Second, in the context of Loher's request for a
continuance, fairminded jurists could disagree over how to
balance the rights recognized in *Brooks* with the competing
concern for a trial court's ability to manage trials recognized
in other Supreme Court opinions.  With regard to
continuances in state trials, the Court has remarked:

> Trial judges necessarily require a great deal of
> latitude in scheduling trials.  Not the least of

> their problems is that of assembling the
> witnesses, lawyers, and jurors at the same
> place at the same time, and this burden
> counsels against continuances except for
> compelling reasons. Consequently, broad
> discretion must be granted trial courts on
> matters of continuances . . . .

*Morris v. Slappy*, 461 U.S. 1, 11 (1983). Similarly, when
discussing federal trials, the Court has stated:

> Our cases have consistently recognized the
> important role the trial judge plays in the
> federal system of criminal justice. The judge
> is not a mere moderator, but is the governor of
> the trial for the purpose of assuring its proper
> conduct and of determining questions of law.
> A criminal trial does not unfold like a play
> with actors following a script; there is no
> scenario and can be none. The trial judge
> must meet situations as they arise and to do
> this must have broad power to cope with the
> complexities and contingencies inherent in the
> adversary process. To this end, he may
> determine generally the order in which parties
> will adduce proof; his determination will be
> reviewed only for abuse of discretion.

*Geders v. United States*, 425 U.S. 80, 86 (1976) (alterations
and internal quotation marks omitted). Thus, at a certain
point, the trial court must have discretion to manage the trial.
Fairminded jurists could disagree over where to draw the line
between the trial court's authority and the constitutional
rights recognized in *Brooks*.

Third, *Brooks* itself showed solicitude for the trial court's ability to manage trials. It cautioned that "nothing we say here otherwise curtails in any way the ordinary power of a trial judge to set the order of proof." 406 U.S. at 613. A fairminded jurist could interpret *Brooks* narrowly and emphasize the trial court's discretion to set the order of proof.

Thus, a fairminded jurist could conclude that the Hawaii ICA's decision was correct based on: (1) the fact that *Brooks* addressed significantly different circumstances; (2) the Supreme Court's recognition elsewhere that trial courts must have broad power to manage trials and to deny continuances; and (3) the Supreme Court's solicitude in *Brooks* for the trial court's ability to set the order of proof.[5] Specifically, such

---

[5] While our focus above is properly on "whether the applicable Supreme Court law leaves the issue raised by the petitioner open or resolves it," *Crace v. Herzog*, 798 F.3d 840, 848 n.3 (9th Cir. 2015), we note that many state and federal courts have reached conclusions that support the Hawaii ICA's decision. As the Hawaii ICA recognized, numerous courts, including our own, "have adopted a narrow interpretation of *Brooks* and a corresponding emphasis on the discretion of trial courts to set the order of proof." *Loher IV*, 2011 WL 2132828, at *7 n.5 (citing *Menendez v. Terhune*, 422 F.3d 1012, 1031 (9th Cir. 2005) ("Apart from its limited holding, *Brooks* did not 'curtail in any way the ordinary power of a trial judge to set the order of proof.'" (quoting *Brooks*, 406 U.S. at 613) (alteration omitted)); *United States v. Singh*, 811 F.2d 758, 762–63 (2d Cir. 1987); *Harris v. Barkley*, 202 F.3d 169, 173–74 (2d Cir. 2000) (per curiam); *Juniel v. Felkner*, No. C 07-4542 RMW (PR), 2010 WL 1912031, at *7 (N.D. Cal. May 11, 2010); *People v. Lancaster*, 158 P.3d 157, 194 (Cal. 2007); *People v. Walden*, 224 P.3d 369, 376 (Colo. Ct. App. 2009); *Book v. State*, 880 N.E.2d 1240, 1248–50 (Ind. Ct. App. 2008); *People v. Smith*, 690 N.Y.S.2d 6, 7 (App. Div. 1999); *see also Loher IV*, 2011 WL 2132828, at *8 n.6 (citing, among others, *United States v. Leon*, 679 F.2d 534, 538 (5th Cir. 1982); *Johnson v. Evans*, No. CIV S-05-1223, 2009 WL 5030661, at *14–15 (E.D. Cal. Dec. 16, 2009); *State v. Turner*, 751 A.2d 372, 384 (Conn. 2000)).

a jurist could readily conclude that a trial court may require a defendant to testify, if at all, while awaiting the arrival of other defense witnesses where the defendant is responsible for the absence of such witnesses.**⁶**   "No precedent of [the

---

In *Harris*, a federal habeas case, the Second Circuit concluded that, "[n]otwithstanding . . . some of the broad language the Court employed in *Brooks*, . . . *Brooks* does not constitute a general prohibition against a trial judge's regulation of the order of trial in a way that may affect the timing of a defendant's testimony." *Harris*, 202 F.3d at 173.  The Second Circuit thus expressly rejected the contention in Judge Smith's partial dissent that *Brooks* announced a "general principle of constitutional law" "that a criminal defendant's rights are violated when a trial judge restricts 'whether, and when in the course of presenting his defense, the accused should take the stand.'"  Smith Op. at 45–46 (quoting *Brooks*, 406 U.S. at 613).  Next, the Second Circuit distinguished the categorical, statutory rule in *Brooks* from an exercise of the "trial court's 'broad power to cope with the complexities and contingencies' of trial."  *Id.* at 174 (quoting *Singh*, 811 F.2d at 762–63).

**⁶** As the Hawaii ICA observed, many courts have "held that a trial court may require the defendant to testify, if at all, while awaiting the arrival of other defense witnesses."  *See Loher IV*, 2011 WL 2132828, at *7 n.5 (citing *Walden*, 224 P.3d at 375–76 (recognizing this as a separate category of cases finding no *Brooks* violation and citing three such state-court decisions); *Juniel*, 2010 WL 1912031, at *5–7; *Lancaster*, 158 P.3d at 194; *Soto v. State*, 751 So.2d 633, 639 (Fla. Ct. App. 1999); *Book*, 88 N.E.2d at 1243–50; *State v. Amos*, 262 N.W.2d 435, 437 (Minn. 1978); *Smith*, 690 N.Y.S.2d at 7).

In *Harris*, defense counsel could not procure the presence of a police officer until the following day, and the trial court ordered the defendant to take the stand immediately.  *See* 202 F.3d at 171–72.  The Second Circuit recognized that a defendant's responsibility for the lack of other defense witnesses distinguished his circumstances from those in *Brooks*: "Harris, unlike Brooks, bears primary responsibility for the situation that engendered the ruling of which he now complains."  *Id.* at 174; *see also Turner*, 751 A.3d at 382–84 ("*Brooks* does not apply here because the

Supreme Court] clearly forecloses that view." *Etherton*, 136 S. Ct. at 1152. *Brooks* simply did not address such a situation. Moreover, it is not "so obvious" that the rules set forth in *Brooks* apply here "that there could be no 'fairminded disagreement' on the question." *See Woodall*, 134 S. Ct. at 1706–07.

Similarly, a fairminded jurist could conclude that a trial court may require a defendant to testify, if at all, to avoid wasting two hours of trial time.[7] That view is likewise not "clearly foreclose[d]" by Supreme Court precedent. *Etherton*, 136 S. Ct. at 1152. *Brooks* did not address the

---

order of witnesses resulted solely from Corey Turner's late disclosure of his alibi and his own statements to the court.").

[7] Again, several courts have reached such a conclusion. For example, in *Walden*, the "prosecution completed its case at about 4 p.m. on the first day of trial." 224 P.3d at 372. The Colorado Court of Appeals concluded that the trial court had not violated *Brooks* when it ordered Walden to testify that afternoon because his expert was not available. *See id.* at 377–78. It noted that the trial "court's decision was influenced by its concern that the jury's time not be wasted. This was a legitimate reason supporting the court's exercise of discretion over the order of witnesses because the court would have been required to adjourn for the day if defendant were to testify after his expert." *Id.* at 377. Whatever portion of Walden's trial day remained after 4 p.m., it was likely less than the two hours left in Loher's first trial day. *See also Leon*, 679 F.2d at 538 ("*Brooks* does not control here. The judge was merely trying to keep the trial from stalling in mid-afternoon."); *Smith*, 690 N.Y.S.2d at 7 ("The court exercised its power to control the flow of the proceedings in the interest of preventing the morning session of the trial from being wasted, and defendant's decision to testify was made with the assistance of counsel."); *Soto*, 751 So.2d at 638–39 (*Brooks* was "inapplicable" where, having granted a 30-minute continuance, the trial judge "simply told the defense, when it could produce no other witnesses, that if the defendant was going to testify, he would have to take the stand. Otherwise, there were no other witnesses available.").

waste of trial time as a justification for requiring a defendant to testify first. Instead, it addressed a different justification: preventing the defendant's testimony from being influenced by the testimony of other defense witnesses. *See Brooks*, 406 U.S. at 607. Although Judge Smith's partial dissent argues that the justification in *Brooks* was "far more compelling" and that the "trade-off was grossly disproportionate," Smith Op. at 45–46, no Supreme Court holding clearly establishes such propositions. To the contrary, as discussed above, several Supreme Court opinions indicate that the trial court's ability to manage the trial is a compelling interest warranting the trial court's broad discretion to deny continuances and to set the order of proof. *See Morris*, 461 U.S. at 11; *Geders*, 425 U.S. at 86.

In sum, extending *Brooks* to a trial court's extemporaneous ruling involves an inherent amount of extrapolation and requires balancing the rights recognized in *Brooks* with the competing concern for a trial court's ability to manage trials effectively. A fairminded jurist could readily conclude that *Brooks* does not require a court to waste two hours of trial time waiting for a defendant's other witnesses to arrive when the defendant is primarily responsible for the absence of such witnesses. Thus, the Hawaii ICA's conclusion that no *Brooks* violation occurred was not "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Etherton*, 136 S. Ct. at 1151 (quoting *Woodall*, 134 S. Ct. at 1702).

We therefore conclude that the Hawaii ICA's rejection of Loher's *Brooks* claim was not objectively unreasonable.

B

Loher also argues that the creation of the post-conviction record and the Hawaii ICA's reliance on it in *Loher IV* were objectively unreasonable under both § 2254(d)(1) and § 2254(d)(2).

1

The post-conviction record was created as a result of the Hawaii ICA's remand in *Loher III*.  There, the court construed Loher's petition as raising both a *Brooks* claim and an IAAC claim for Shintani's failure to raise *Brooks* in Loher's direct appeal.  *Loher III*, 193 P.3d at 448.

It observed that, when Hawaii courts evaluate IAAC claims, "[c]ounsel's scope of review and knowledge of the law are assessed."  *Id.* at 449 (quoting *Briones v. State* (*Briones II*), 848 P.2d 966, 978 (Haw. 1993)).  In *Briones II*, the Hawaii Supreme Court explained that the "counsel whose performance is being evaluated is given an opportunity at the trial court level to explain his or her understanding of the issues presented for review." *Briones II*, 848 P.2d at 978 n.17 (citing Haw. R. Penal P. 40(f)).  It further instructed that, "[i]n the absence of sufficient evidence in the record on appeal, an appellate court should remand for the development of such a record."  *Id.*

In *Loher III*, the Hawaii ICA remanded to develop the record on Loher's IAAC claims.  Because "Loher's appellate counsel ha[d] not been given an opportunity to explain his understanding of the 'forced testimony' issue, and the issue ha[d] not been fully briefed and argued at a hearing on the Rule 40 Petition," the Hawaii ICA was "unable to determine

why the [*Brooks*] issue was not raised." *Loher III*, 193 P.3d at 449. In "the absence of a sufficient record on this appeal, including an opportunity for Loher's former appellate counsel to be heard," the Hawaii ICA concluded that it "must remand for the development of such a record on the issue of whether Loher had ineffective assistance of appellate counsel." *Id.* at 450. The court noted that a remand would assist in determining not only why Shintani did not brief the *Brooks* issue but also whether a *Brooks* claim was "potentially meritorious." *Id.* at 449.

2

"AEDPA does not provide any specific guidance on what sort of procedural deficiencies will render a state court's fact-finding unreasonable" under § 2254(d)(2). *Hibbler*, 693 F.3d at 1147. When determining whether a state's fact-finding procedures were reasonable, we must engage in a "fact-bound and case-specific inquiry." *Id.*

Here, to assist in evaluating the IAAC claim, the Hawaii ICA remanded for the entirely reasonable purpose of providing Loher's appellate counsel an opportunity to explain why he did not brief the *Brooks* issue. *Loher III*, 193 P.3d at 449. While Loher argues that the remand was unnecessary because the existing trial record supported a *Brooks* claim, he does not explain why the state courts were required to consider the *Brooks* claim first without collecting further evidence on the IAAC claim. Consequently, he has failed to establish that the remand was objectively unreasonable under § 2254(d)(2).

Moreover, Loher cites no Supreme Court authority suggesting that an appellate court should not remand for the

collection of evidence relevant to an IAAC claim.[8]  Thus, ordering the remand was not an objectively unreasonable application of Supreme Court precedent under § 2254(d)(1).

3

Loher also argues that it was objectively unreasonable "to adduce testimony from either trial counsel or the petitioner on remand in the post-conviction proceeding, when the issue to be litigated was simply whether *appellate* counsel had been ineffective for missing the *Brooks* issue."  But the Rule 40 court did not request testimony from Loher and Kugiya. Instead, Loher's counsel called Loher to the stand, where he asserted that he had not intended to testify at trial and that he had expressed such intent to Kugiya.  This caused the State to call Kugiya to the stand to rebut Loher's testimony.

Loher may not complain to us that the Rule 40 court considered testimony relevant to the *Brooks* claim when his counsel either introduced or opened the door to such testimony.  *See United States v. Myers*, 804 F.3d 1246, 1254 (9th Cir. 2015) (as amended) (citation omitted) ("The doctrine of invited error prevents a [party] from complaining of an error that was his own fault.").  Moreover, Loher has

---

[8] Indeed, remanding for counsel to explain his conduct comports with the federal test for ineffective assistance of counsel claims set forth in *Strickland v. Washington*, 466 U.S. 668, 687–95 (1984); *see also Smith v. Robbins*, 528 U.S. 259, 285–88 (2000) (confirming that *Strickland* is the proper standard for IAAC claims).  There, the Court explained that "every effort [must] be made . . . to reconstruct the circumstances of counsel's challenged conduct[] and to evaluate the conduct from counsel's perspective at the time."  *Strickland*, 466 U.S. at 689.  Obtaining counsel's explanation of his own conduct and perspective is certainly a reasonable part of such an evaluation.

cited no Supreme Court authority establishing that a court must restrict its consideration of a *Brooks* claim to the trial record. Therefore, the Rule 40 court's hearing testimony from Loher and Kugiya was not objectively unreasonable under § 2254(d)(1) or § 2254(d)(2).

4

Finally, Loher challenges the Hawaii ICA's reliance on the facts found by the Rule 40 court.

The Hawaii ICA concluded that such findings were supported by substantial evidence. *Loher IV*, 2011 WL 2132828, at *9. First, it reasonably upheld the finding that Loher's decision to testify "congealed" before the trial court's ruling. *Id.* It pointed to numerous assertions by Kugiya in the post-conviction record and the trial court's contemporaneous statement that Kugiya had represented to the court that Loher was going to testify. *Id.* To the extent that those statements conflicted with Loher's post-conviction testimony and Kugiya's contemporaneous statements, the appellate court reasonably deferred to the Rule 40 court, which was in the best position to judge the credibility of the witnesses. *Id.*

Second, the Hawaii ICA reasonably upheld the finding that Loher was responsible for the situation that required him to testify because his witnesses were not present. *Id.* at *9–10. On appeal, Loher did not challenge the Rule 40 court's "findings that (1) Kugiya made a mistake as to the timing of the State's case, and (2) there was no evidence that Kugiya ever consulted with the prosecutor as to the length of the State's case or the number of witnesses the State would

actually call." *Id.* at \*10. With these facts uncontested, the Hawaii ICA's reliance on them was certainly reasonable.

Loher argues that, nevertheless, Kugiya was not responsible for the situation because the prosecution unexpectedly called only four of the fourteen witnesses on its witness list. However, Loher conceded at oral argument that "both sides typically over-designate the number of witnesses that they are going to call" and that "it is incumbent upon trial counsel to talk to one another as the trial begins" to ascertain which witnesses would realistically be called and how long such testimony would take.[9] Because Kugiya was responsible for taking such steps to determine when the defense should be ready to begin its case and did not do so, the Hawaii ICA reasonably upheld the determination that Kugiya was responsible for the absence of other defense witnesses.

Thus, we reject Loher's challenges to the creation of the post-conviction record and to the Hawaii ICA's reliance on the facts found on remand.

---

[9] The trial court made the latter point when ruling: "The Court believes that it was the responsibility . . . of counsel to determine when witnesses would be available. Defense counsel was free to discuss with the State the witnesses called and when they would anticipate finishing their case." *See also* Tallman Op. at 39–40; *see generally* 2 John Toothman & Douglas Danner, *Trial Practice Checklists* § 9:51, ¶ 6, Westlaw (database updated March 2016) ("Another complication in defendant's case is that counsel generally does not know when plaintiff will rest and defendant's case will begin: a. plaintiff may make an estimate of when its case will be completed, but these estimates may not be accurate, b. different judges also have different habits regarding the length of a trial day, c. some judges will be lenient in postponing the beginning of defendant's case if plaintiff finishes early, but others will not, d. defense counsel should have witnesses available at the earliest possible time the plaintiff may rest, even if this means that the witnesses may be waiting for some time . . . .").

IV

A

Loher persuasively argues that Hawaii has waived any challenge to the district court's grant of relief for ineffective assistance of appellate counsel.

"We address 'only issues which are argued specifically and distinctly in a party's opening brief.'" *Chadd v. United States*, 794 F.3d 1104, 1110 n.4 (9th Cir. 2015) (quoting *Greenwood v. FAA*, 28 F.3d 971, 977 (9th Cir. 1994)). "We adhere to this approach for sound prudential reasons." *Ground Zero Ctr. for Non-Violent Action v. U.S. Dep't of Navy*, 383 F.3d 1082, 1091 n.7 (9th Cir. 2004). "The premise of our adversarial system is that appellate courts do not sit as self-directed boards of legal inquiry and research, but essentially as arbiters of legal questions presented and argued by the parties before them." *NASA v. Nelson*, 562 U.S. 134, 148 n.10 (2011) (quoting *Carducci v. Regan*, 714 F.2d 171, 177 (D.C. Cir. 1983) (Scalia, J.)); *see also Indep. Towers of Wash. v. Washington*, 350 F.3d 925, 929 (9th Cir. 2003) ("Our adversarial system relies on the advocates to inform the discussion and raise the issues to the court."); *Abovian v. INS*, 219 F.3d 972, 981 (9th Cir. 2000) (Wallace, J., dissenting) ("There is a risk that the court, lacking the analysis ordinarily provided by adversarial parties, will reach the wrong conclusion on the merits and create poor precedent . . . .").[10]

---

[10] Judge Tallman's partial dissent argues that we have discretion to consider issues not argued specifically and distinctly in an opening brief. Tallman Op. at 40. But such discretion relates to a different type of waiver—our "'general rule' against entertaining arguments on appeal that were not presented or developed before the district court." *In re Mercury*

Here, in its opening brief, the State did not argue at all that the district court's grant of relief for IAAC should be reversed. After Loher argued in his response brief that Hawaii had waived this issue, the State did not even address the issue in its reply brief.

The district court granted Loher relief on three separate grounds: (1) the *Brooks* violation ("Ground I"); (2) IAAC for failure to raise the *Brooks* claim ("Ground II"); and (3) the *Apprendi* violation ("Ground III"). *Loher VI*, 23 F. Supp. 3d at 1186, 1200. Because Hawaii did not object to the magistrate judge's recommendation that the court grant relief on Ground III, the court adopted that recommendation without analysis. The district court then analyzed Ground I and Ground II in separate sections of its opinion. *See id.* at 1193–1200 (Section I); *id.* at 1200 (Section II).[11]

These two grounds, although both related to the merits of the underlying *Brooks* claim, are independent from each other. For the *Brooks* claim, the question is whether *Loher IV* involved an unreasonable application of *Brooks*, and we have concluded it was not. *See supra* Section III.A. For the IAAC

_____

*Interactive Corp. Sec. Litig.*, 618 F.3d 988, 992 (9th Cir. 2010) (citation omitted); *see United States v. Northrop Corp.*, 59 F.3d 953, 957 n.2 (9th Cir. 1995) (addressing waiver of issue "raised for the first time on appeal").

[11] Because the district court granted relief on Ground II, Judge Tallman's partial dissent errs when it suggests that Loher's entitlement to habeas relief on his IAAC claim depends on whether the Hawaii ICA's decision in *Loher IV* was "contrary to, or an unreasonable application of, *Strickland*." Tallman Op. at 40. At this stage, Loher is entitled to relief on his IAAC claim unless Hawaii argues successfully that the district court erred in granting such relief. Hawaii has not raised any argument on this issue.

claim, the question would be whether *Loher IV* was contrary to, or involved an unreasonable application of, *Strickland*. *See Hurles v. Ryan*, 752 F.3d 768, 785 (9th Cir. 2014); *see also Smith*, 528 U.S. at 285–88 (confirming that *Strickland* is the proper standard for IAAC claims).

Judge Tallman's partial dissent suggests that our conclusion in Section III.A—that *Loher IV* did not involve an objectively unreasonable application of *Brooks*—compels the conclusion that *Loher IV* was neither contrary to, nor an objectively unreasonable application of, *Strickland*. Tallman Op. at 41–42. It does not. Under *Strickland*, the question is whether "appellate counsel's representation fell below an objective standard of reasonableness" and, "but for counsel's errors, a reasonable probability exists that he would have prevailed on appeal." *Hurles*, 752 F.3d at 785 (citation omitted). We have concluded that the Hawaii ICA's rejection of the *Brooks* claim in a *post-conviction appeal*, based on a *post-conviction record*, did not involve an objectively unreasonable application of *Brooks*. *See* Section III.A. However, such conclusion simply does not answer whether a "reasonable probability exists" that Loher would have prevailed in his *direct appeal*, based on the *trial record*, if his counsel had raised a *Brooks* claim.**[12]**

---

**[12]** The approach suggested in Judge Tallman's partial dissent, considering the merits of the IAAC claim, raises numerous questions for which the State has supplied no arguments. For example, did the Hawaii ICA even determine whether a *reasonable probability* exists that Loher would have prevailed in his *direct* appeal? One could argue that *Loher IV* applied a more burdensome standard by rejecting the IAAC claim on the ground that the *Brooks* claim was not *actually* meritorious in the *post-conviction* appeal on the basis of evidence that was not in the trial record. *Loher IV*, 2011 WL 2132828, at *10. If the Hawaii ICA applied the wrong standard, what would we conclude on de novo review? Did

Because Hawaii has failed to argue this independent IAAC issue specifically and distinctly, it has waived its challenge to the district court's grant of relief on Ground II.

B

Loher also persuasively argues that the State waived its challenge to Loher's *Apprendi* claim.

"'As a general matter, a litigant must raise all issues and objections' before the trial court. Thus, in the ordinary course, a party who does not complain of an issue in the district court forfeits his right to review of that issue on appeal." *Bastidas v. Chappell*, 791 F.3d 1155, 1159 (9th Cir. 2015) (alteration omitted) (quoting *Freytag v. C.I.R.*, 501 U.S. 868, 879 (1991)). "While 'failure to object to a magistrate judge's factual findings waives the right to challenge those findings, it is well settled law in this circuit that failure to file objections . . . does not automatically waive the right to appeal the district court's conclusions of law,' but is rather 'a factor to be weighed in considering the propriety of finding waiver of an issue on appeal.'" *Id.* (alterations omitted) (citing *Miranda v. Anchondo*, 684 F.3d 844, 848 (9th Cir. 2012)).

---

counsel's performance fall below an objective standard of reasonableness? If the Hawaii ICA had considered solely the trial record, is there a reasonable probability that it would have ruled in favor of Loher on his direct appeal, as it did for Kido? With respect to these questions, Loher raises non-trivial arguments, which the State makes no attempt to rebut. Ultimately, we need not consider such contentions or answer any of these questions because the State has waived the issue by failing to raise it its opening brief.

Here, the district court adopted the magistrate's recommendation to grant relief on Loher's *Apprendi* claim because Hawaii did not object to that recommendation. *Loher VI*, 23 F. Supp. 3d at 1186. But Hawaii did more than fail to object to the magistrate's legal conclusion. The State affirmatively requested that the district court "adopt the Magistrate Judge's findings and recommendations," without any qualification or reservation. *Cf. Myers*, 804 F.3d at 1254 (addressing invited error). Hawaii's failure to object and its affirmative request invited the district court to adopt the magistrate's conclusion on the *Apprendi* claim and deprived this court of the considered views of the district court on this issue. The State's failure to object and its affirmative invitation to adopt the magistrate's recommendation constitute waiver of its challenge to Loher's *Apprendi* claim.

V

Because Loher prevails on his IAAC and *Apprendi* claims, but not on his *Brooks* claim, we must remand for further proceedings. We provide the following guidance for the district court to consider in fashioning the remedy.

A

A "court has broad discretion in conditioning a judgment granting habeas relief. Federal courts are authorized, under 28 U.S.C. § 2243, to dispose of habeas corpus matters 'as law and justice require.'" *Hilton v. Braunskill*, 481 U.S. 770, 775 (1987). "More specifically, a court may issue a conditional writ that requires the state to release a petitioner unless it takes some other remedial action, such as retrial of the petitioner." *Lujan v. Garcia*, 734 F.3d 917, 933 (9th Cir. 2013).

"The court's discretion, however, is still bound by the Constitution . . . ." *Johnson v. Uribe*, 700 F.3d 413, 425 (9th Cir. 2012). In the Sixth Amendment context, the Supreme Court has instructed that "remedies should be 'tailored to the injury suffered from the constitutional violation and should not unnecessarily infringe on competing interests.'" *Lafler v. Cooper*, 132 S. Ct. 1376, 1388–89 (2012) (quoting *United States v. Morrison*, 449 U.S. 361, 364 (1981)). "Thus, a remedy must 'neutralize the taint' of a constitutional violation, while at the same time not grant a windfall to the defendant or needlessly squander the considerable resources the State properly invested in the criminal prosecution." *Id.* (quoting *Morrison*, 449 U.S. at 365). "The court's remedy 'should put the defendant back in the position he would have been in if the Sixth Amendment violation never occurred.'" *Johnson*, 700 F.3d at 425 (quoting *Chioino*, 581 F.3d at 1184).

## B

Here, having granted relief on all three grounds, the district court ordered Hawaii to release or to retry Loher. *Loher VI*, 23 F. Supp. 3d at 1200–01. Such remedy was "tailored to the injury suffered from" a *Brooks* violation, which results in a presumptively unfair trial. *See Bell v. Cone*, 535 U.S. 685, 695–96 & n.3 (2002) (citing *United States v. Cronic*, 466 U.S. 648, 659 n.25 (1984) (listing *Brooks* as a case in which a presumptively unfair trial resulted)). Because the writ will now be granted solely with respect to the *Apprendi* and IAAC claims, a new trial would no longer be tailored to such constitutional violations and would improperly grant Loher a windfall. As a result, on remand, the district court's conditional writ should not require the state to release or retry Loher.

## C

We conclude that the appropriate remedy for a sentencing error such as an *Apprendi* violation is resentencing "utilizing a constitutionally sound procedure." *See Chioino*, 581 F.3d at 1186 (concluding that resentencing by the state trial court is the appropriate remedy for a violation of *Apprendi*'s progeny, *Cunningham v. California*, 549 U.S. 270 (2007)).

## D

The appropriate remedy is not as clear for ineffective assistance of appellate counsel.[13]  The district court should consider the appropriate remedy in light of supplemental briefing.   On remand, we suggest that the district court consider *Robbins v. Smith*, 152 F.3d 1062, 1068–69 (9th Cir. 1997), *rev'd on other grounds*, 528 U.S. 259 (2000); *Lynch v. Dolce*, 789 F.3d 303, 320 (2d Cir. 2015) ("In general, the appropriate remedy for ineffective assistance of appellate counsel is to grant a new appeal."); and, obviously, any other authorities that the parties bring to its attention.

---

[13] We leave it to the district court to decide whether the principles delineated in the Sixth Amendment cases in Section V.A should apply to the remedy for ineffective assistance of appellate counsel, which constitutes a violation of the Due Process Clause of the Fourteenth Amendment. *See Tamalini v. Stewart*, 249 F.3d 895, 902 (9th Cir. 2001) (discussing *Martinez v. Ct. App. of Cal.*, 528 U.S. 152, 161 (2000) ("[T]he Sixth Amendment does not apply to appellate proceedings . . . .")); *Moormann v. Ryan*, 628 F.3d 1102, 1106 (9th Cir. 2010).  We note that we have previously determined that it is "sensible" to apply such principles to the remedy for a violation of the Fifth Amendment. *See Lujan*, 734 F.3d at 934–36.

In conclusion, we remand to the district court with instructions to modify its conditional writ to require Hawaii to release Loher or to provide him with resentencing within a reasonable period of time. In addition, the district court should consider what additional condition is required to remedy the ineffective assistance of Loher's appellate counsel.[14]

## VI

For the foregoing reasons, the district court's judgment is **AFFIRMED IN PART, REVERSED IN PART**, and this case is **REMANDED WITH INSTRUCTIONS**. Each party shall bear its own costs on appeal.

---

[14] Contrary to the suggestion in Judge Tallman's partial dissent, Tallman Op. at 42–43, the Hawaii ICA has not considered, and Loher has not yet litigated, whether Loher's trial record makes out a meritorious *Brooks* claim. *Loher IV* decided that Loher's *Brooks* claim was not meritorious on the basis of the post-conviction record, and Section III of this opinion merely concludes that such decision was not *objectively unreasonable*. That is a low bar to clear. Moreover, Section III says nothing about *Loher IV*'s conclusion that Loher would not have prevailed in his original direct appeal, based on the trial record, if his counsel had raised a *Brooks* claim or *Loher IV*'s consideration of evidence outside the trial record for such prejudice analysis. To the extent that the district court's remedy requires the State and the state courts to expend resources to address Loher's *Brooks* claim, the blame will lie squarely with the State for failing to argue for reversal of the district court's grant of the writ with respect to Loher's IAAC claim.

TALLMAN, Circuit Judge, concurring in part and dissenting in part:

With the utmost respect for the views of my two colleagues, I find myself at odds with portions of both opinions. I concur in all but Sections IV.A and V.D of Judge O'Scannlain's opinion and would remand solely for resentencing as explained in Section VI. I respectfully dissent from that part of his opinion which declares that Hawaii has waived its challenge to the district court's grant of habeas relief on Loher's ineffective assistance of appellate counsel (IAAC) claim and suggesting that the district court order a new direct appeal to reconsider the *Brooks* and IAAC claims already decided against Loher by the Hawaiian appellate courts. I also disagree with Judge Smith's conclusion that the state court's construction of *Brooks v. Tennessee*, 406 U.S. 605 (1972), was objectively unreasonable under 28 U.S.C. § 2254(d).

# I

Judge Smith's opinion does not afford sufficient AEDPA deference to the factual findings of the Hawaii courts following an evidentiary hearing on state collateral review. *See* 28 U.S.C. § 2254(d). Those courts expressly found that Loher's trial counsel created the mid-trial hiatus by failing to confer with opposing counsel as to how many witnesses the State intended to actually call. That factual finding is entitled to a presumption of correctness, which Loher has not rebutted by "clear and convincing evidence." 28 U.S.C. § 2254(e)(1). The findings included that when the State rested early on the first day, the defense was unprepared to call any of its witnesses except for the defendant, who had intended to testify all along. Simply because Judge Smith would have

found otherwise is not good enough. *See Wood v. Allen*, 558 U.S. 290, 301 (2010) ("[A] state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance."); *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007) ("The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold.").

In my trial experience, it is not unusual to list far more witnesses than counsel will actually need to put on during the case in chief. That avoids a ruling barring them from testifying because they were not listed in advance. It is the responsibility of counsel to confer on timing issues and to be ready to fill gaps in the trial day to avoid exactly what happened here—inexcusably running out of witnesses. The language of the Supreme Court opinions, and Federal Rule of Evidence 611,[1] recognize the key role and responsibility of the trial judge to keep the trial moving. *See Morris v. Slappy*, 461 U.S. 1, 11 (1983) ("Trial judges necessarily require a great deal of latitude in scheduling trials."); *Geders v. United States*, 425 U.S. 80, 86 (1976) ("The judge is not a mere moderator, but is the governor of the trial for the purpose of assuring its proper conduct and of determining questions of law.") (citations omitted). This is especially important in congested urban trial courts, like those in Honolulu, that must

---

[1] Federal Rule of Evidence 611 instructs courts to: "exercise reasonable control over the mode and order of examining witnesses and presenting evidence" in order to "avoid wasting time." The trial judge cited to the Hawaiian equivalent of the federal rule in refusing to adjourn two hours early. Jurors do not like to come in for half a day and then be told to go home. It is inconsiderate of their valuable time and a waste of precious courtroom space and limited judicial officer time as well.

daily address heavy trial caseloads so that all defendants can be heard. On this record, the Hawaiian courts were not objectively unreasonable in ruling that there was no *Brooks* error.

## II

I disagree with Section IV.A of Judge O'Scannlain's opinion because I believe we should exercise our discretion to consider whether Loher is entitled to habeas relief on his IAAC claim. Hawaii's failure to address this issue separately and distinctly on appeal has unnecessarily complicated this case. While we ordinarily address "only issues which are argued specifically and distinctly in a party's opening brief," *Chadd v. United States*, 794 F.3d 1104, 1109 n.4 (9th Cir. 2015) (quoting *Greenwood v. FAA*, 28 F.3d 971, 977 (9th Cir. 1994)), this is not always the case. We have held that "the waiver rule is not one of jurisdiction, but discretion." *United States v. Northrop Corp.*, 59 F.3d 953, 957 n.2 (9th Cir. 1995) (citing *Singleton v. Wulff*, 428 U.S. 106, 121 (1976)).

I would exercise that discretion here, considering the "record relevant to the matter is fully developed" and the district court considered the IAAC claim below. *See id.* We should find that Loher is not entitled to habeas relief on his IAAC claim, which is intertwined with the merits of his invalid *Brooks* claim.

As Judge O'Scannlain's opinion acknowledges, the inquiry as to whether Loher is entitled to habeas relief on his IAAC claim depends on whether the Hawaii state court's decision in *Loher IV* was contrary to, or involved an unreasonable application of, *Strickland v. Washington*, 466 U.S. 668 (1984). DFO Op. at 31–33; *see Smith v.*

*Robbins*, 528 U.S. 259, 285 (2000). Under *Strickland*'s two-part test, Loher had to show both that his appellate counsel's representation fell below an objective standard of reasonableness for failing to raise the *Brooks* issue and that there is "a reasonable probability that, but for his counsel's unreasonable failure to file a merits brief, he would have prevailed on his appeal." *Smith*, 528 U.S. at 285 (citing *Strickland*, 466 U.S. at 694). "The likelihood of a different result must be substantial, not just conceivable." *Harrington v. Richter*, 562 U.S. 86, 112 (2011). We may consider either *Strickland* prong, and need not address both if Loher fails one. *Strickland*, 466 U.S. at 697.

Here, Loher cannot meet the prejudice prong—as Hawaii's Intermediate Court of Appeal reasonably recognized. In rejecting Loher's IAAC claim, the state court held:

> [Appellate counsel's] omission of the [*Brooks*] issue did not result in the "withdrawal or impairment of a potentially meritorious defense." The Circuit Court did not err in concluding that [appellate counsel's] omission of the "forced testimony" issue did not amount to ineffective assistance of appellate counsel.

*Loher v. State*, No. 29181, 2011 WL 2132828, at *10 (Haw. Ct. App. May 31, 2011) (citation omitted).

We have ruled that under AEDPA, it was not objectively unreasonable to find Loher's *Brooks* claim meritless. DFO Op. at 16–29. How then can it be ineffective of Loher's appellate lawyer to have failed to raise this claim? It cannot.

Accordingly, the Hawaii ICA reasonably found, in *Loher IV*, that Loher had not shown he was prejudiced by appellate counsel's omission of the *Brooks* claim (the second prong of the two-part *Strickland* test). *See Loher IV*, 2011 WL 2132828, at \*10 (appellate counsel's omission of the *Brooks* issue "did not result in the withdrawal or impairment of a potentially meritorious defense").

Because this finding was not contrary to, or an unreasonable application of, *Strickland*, Loher is not entitled to habeas relief on his IAAC claim.

## III

Asking the state court to revisit an issue it already decided is senseless. Accordingly, I dissent from Section V.D of Judge O'Scannlain's opinion that remands to the district court by citing to cases suggesting a new direct appeal be ordered as an additional condition required to remedy the ineffective assistance of Loher's appellate counsel. DFO Op. at 36–37. Federal habeas law does not require a "do over" when we already know the result will be the same as previously pronounced by the state courts. *See Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993) (federal habeas petitioners are not entitled to habeas relief unless the alleged violation had a "substantial and injurious effect or influence in determining the jury's verdict").

While the district court, on remand, has discretion to consider the appropriate remedy, I strongly disagree with any suggestion that Loher might be entitled to a new direct appeal on an issue that the state courts have *already* decided. The Hawaii state courts have previously expended substantial judicial resources, that included an evidentiary hearing,

deciding adverse to Loher the merits of the *Brooks* and IAAC issues. Granting Loher a new direct appeal—on an issue that lacks merit—would be a windfall.

A new direct appeal under Judge O'Scannlain's view would also apparently require the Hawaii state courts to disregard all of the important evidence that was adduced in the state evidentiary hearing on the *Brooks* issue. *See* DFO Op. at 37 n.14. We should not, under the guise of doing what is "equitable," turn back the hands of time and deprive the state court of important evidence obtained from the evidentiary hearing that was conducted for the exact purpose of determining whether the *Brooks* claim was "potentially meritorious." *See Strickland*, 466 U.S. at 689 (every effort must be made to "reconstruct the circumstances of counsel's challenged conduct"). That hearing conclusively showed it was not.

This is not a game. Habeas corpus exists to remedy "extreme malfunctions in the state criminal justice systems." *Harrington*, 562 U.S. at 102 (citation omitted). The full record in this case certainly does not present one.

In my view, the appropriate remedy is to leave the conviction intact and simply remand for re-sentencing on the *Apprendi* claim—which I agree has been waived for all of the reasons stated in Section IV.B of Judge O'Scannlain's opinion. On remand, I would urge the district court to avoid imposing any remedy that would "squander the considerable resources the State properly invested" in determining whether the *Brooks* and IAAC claims were meritorious. *Lafler v. Cooper*, 132 S. Ct. 1376, 1388–89 (2012). Loher, a recidivist sex-offender, should not get a second-bite to challenge his conviction.

M. SMITH, Circuit Judge, concurring in part and dissenting in part:

I concur in the majority's holding that the government has waived its challenges to Loher's ineffective assistance of counsel (IAC) and *Apprendi* claims, as well as in the majority's proposed remedy for those violations, as discussed in Section V of the opinion. I respectfully disagree, however, with the majority's rejection of Loher's claims under *Brooks v. Tennessee*, 406 U.S. 605 (1972). I would hold instead that the state court's denial of relief was "contrary to, or an unreasonable application" of the Supreme Court's holding in *Brooks*, within the meaning of 28 U.S.C. § 2254(d)(1).[1]

## I.   *Brooks* controls the outcome of Loher's case.

*Brooks* struck down a state rule that criminal defendants must testify first—before all other defense witnesses—or forfeit the right to testify at all. 406 U.S. at 605. *Brooks*'s holding rested on two bases: first, that this procedural rule unlawfully curtailed a defendant's right to remain silent, and second, that it deprived a defendant of counsel's guidance in deciding "whether and when" to testify, in violation of due process. *Id*. at 612–13. As the Court highlighted, this Hobson's choice "casts a heavy burden on a defendant's otherwise *unconditional* right not to take the stand." *Id*. at

---

[1] Despite some difficulty accepting the bona fides of factfinding conducted a decade after the relevant events, I will assume that the facts found by the state court are true. Therefore, my view does not rely on a conclusion that its assessment of the evidence was "unreasonable" under 28 U.S.C. § 2254(d)(2). Rather, I find legal error in the manner in which the state court construed the holding of *Brooks*, such that its construction was contrary to, or an objectively unreasonable application of, established law.

610–11 (emphasis added). The Court further explained that this rule unlawfully deprived the defendant of the strategic hand of counsel in the timing of his testimony, a "critical element of his defense." *Id*. at 612–13.

*Brooks* set forth a robust rule of constitutional law. In reaching its conclusion, the *Brooks* Court considered Tennessee's countervailing interest in "preventing testimonial influence," but held that this state concern did not override a defendant's Fifth and Fourteenth Amendment rights. *Id*. at 611–12. Rather, *Brooks* held that a criminal defendant's rights are violated when a trial judge restricts "whether, and when in the course of presenting his defense, the accused should take the stand." *Id*. at 613. Such was the choice that the trial judge presented to Loher's counsel. ("Is your client going to testify or is he going to waive his right to testify?"). These facts fall squarely within the scope of *Brooks*.

In support of its conclusion that *Brooks* does not control, the majority relies on cases where other courts have cited a trial judge's authority over the "order of proof" to justify occasions when a defendant was compelled to testify. 406 U.S. at 613. Indeed, the *Brooks* Court agreed that its holding did not "otherwise" disturb a trial judge's "ordinary power" over the order of proof. *Id*. Yet the core of the constitutional disturbance remains when, as here, a trial judge unjustifiably compels a defendant to testify first or not at all. Nothing in the reasoning of *Brooks* turns on whether the trial judge's ultimatum was "extemporaneous," or occurred in the middle of trial. Indeed, *Brooks* involved far more compelling, and admittedly legitimate, state concerns in preventing testimonial influence, which failed to outweigh a defendant's rights under the Fifth and Fourteenth Amendments. *Id*. at 611–12. In contrast, the trial judge summarily concluded that

an efficiency interest in the remaining two hours' worth of time trumped Loher's constitutional rights. This trade-off was grossly disproportionate. To conclude otherwise would be to eviscerate one of the central concerns of *Brooks*—to preserve a defendant's "unconditional right not to take the stand." *Id*. at 610.

The majority ultimately relies on whether fairminded jurists could disagree over "where to draw the line between the trial court's authority and the constitutional rights recognized in *Brooks*." Such an approach has some appeal. Yet the fact that the *Brooks* Court framed its holding as a general principle of constitutional law does not indirectly weaken its force by suggesting that its application to Loher's particular circumstances was objectively reasonable. As the Court has clarified, "AEDPA does not require state and federal courts to wait for some nearly identical factual pattern before a legal rule must be applied. . . . The statute recognizes, to the contrary, that even a general standard may be applied in an unreasonable manner." *Panetti v. Quarterman*, 551 U.S. 930, 953 (2007) (internal quotation marks and citation omitted). Nor does the "fairminded jurist" inquiry boil down to a matter of nose-counting the decisions of other courts in other cases. *See Crace v. Herzog*, 798 F.3d 840, 848 n.3 (9th Cir. 2015).

Even so, the cases cited by the majority are materially distinguishable from *Brooks* and the case at hand. They illustrate only the general proposition that the outer bounds of a trial judge's discretion may vary from case to case—not that the line was unclear in the case before us, where the trial court abrogated Loher's constitutional rights to preserve a mere two hours of trial time.

For example, the majority relies on the Second Circuit's decision in *Harris v. Barkley*, 202 F.3d 169 (2d Cir. 2000), where the trial court compelled a criminal defendant to testify before his last witness. Unlike the facts in the case at hand, the defendant in *Harris* flouted the trial court's instructions by failing to subpoena a witness to appear on the specific date that the trial court had pre-determined. *Id*. at 174.[2]

*Menendez v. Terhune*, 422 F.3d 1012, 1031 (9th Cir. 2005), is likewise inapropos because that case decided the limited issue of whether a trial court could enforce the rules of evidence by requiring a defendant to first lay the foundation for the testimony of other witnesses, when the defendant was the sole witness who could do so. In no way did the state court in *Menendez* mandate that the defendant testify first or forfeit the right to testify at all—it simply mandated that the defendant testify first if he desired to introduce testimony from those witnesses in order to comply with longstanding evidentiary rules. *See id.*

Therefore, the facts of these cases are far afield of *Brooks*, and of the instant case. They might permit reasonable jurists

---

[2] Similarly, in *United States v. Leon*, 679 F.2d 534, 538 (5th Cir. 1982), the Fifth Circuit addressed a situation where defense counsel was unable to secure the appearance at trial of a voluntary witness. *Leon*'s analysis of this issue is scant, but it appears to rest its holding on the assumption that the defendant had already decided to testify and that the witness was merely a voluntary one. In addition, *Leon*'s reasoning commits the same legal error discussed below, *infra* Section II.A. That is, a determination that the trial court's ruling is harmless cannot factor into whether the ruling itself violated *Brooks*. In parsing claims of trial error, we look to whether an error of constitutional magnitude occurred. Then, we examine whether such error is susceptible to harmless-error analysis. *See Arizona v. Fulminante*, 499 U.S. 279, 308 (1991).

to disagree about facts that lie at the periphery of the *Brooks* rule. But this case lies at its core. The state court's reasoning was thus contrary to, or an unreasonable application of, *Brooks*.

## II. The state court's analysis of the *Kido* exceptions to *Brooks* was contrary to, or an unreasonable application of, *Brooks*.

The state court in this case rested its analysis on certain putative exceptions to *Brooks* that were enunciated by the Hawaii Court of Appeals in *State v. Kido*, 76 P.3d 612, 619 (Haw. Ct. App. 2003). The state court found that the *Kido* exceptions applied because (1) Loher's decision to testify "congealed" prior to the trial court's actions and (2) Loher created the "exigency" that compelled him to testify first. *Loher v. Hawaii*, No. 29-818, 2011 WL 2132828 (Haw. Ct. App. 2011) ("*Loher IV*"), *8–*9. In adopting the *Kido* exceptions, the state court unreasonably strayed from *Brooks*'s holding.

## A.  Whether Loher's intent to testify had "congealed"

The first *Kido* exception involves a factual inquiry into whether a defendant's decision to testify had "congealed" prior to the trial court's action. 76 P.3d at 619. Yet *Brooks* emphasized that a defendant "cannot be absolutely certain that his witnesses will testify as expected or that they will be effective on the stand." 406 U.S. at 609. Rather, a defendant is constitutionally entitled to wait "until [his testimony's] value can be realistically assessed." *Id.* at 610. Prior to the trial court's ruling, Loher made no definitive statement that he would waive his right to remain silent by taking the stand and exposing himself to cross-examination. *Loher v. Thomas*,

23 F. Supp. 3d 1182, 1198 (D. Haw. 2014).[3] The district court quoted then-Circuit Judge Anthony Kennedy as follows:

> At the outset of a trial, a defendant in good faith may intend to testify, but it may be quite reasonable for him to change his mind after considering the course taken by the evidence. . . . Thus, a defendant cannot be bound by any pretrial statement of election; in fact, it would appear to be unconstitutional to do so. *See Brooks v. Tennessee, supra.* There is absolutely nothing to guarantee the sincerity of such pretrial assurances, and even when statements of election are given in good faith, they may be based on fictional assumptions.

*Id.* at 1199 (quoting *United States v. Cook*, 608 F.2d 1175, 1189 (9th Cir. 1979) (Kennedy, J., dissenting in part and concurring in part)). For these reasons, *Brooks* discouraged close probing of whether a defendant intended to testify—instead, it allowed a defendant the right to decide, or change his mind, after viewing the strength of his case. *See* 406 U.S. at 609–10.

Equally improper is the fact that the exception fails to consider the entirety of the Court's opinion in *Brooks. Brooks* did not limit itself to the question of *whether* a defendant was

---

[3] Even if the state court's post-hoc inquiry into whether Loher had intended to testify all along was in accordance with *Brooks*, Loher was not required to take the stand to establish an alibi defense under Hawaiian law. *See Loher*, 23 F.Supp.3d at 1198 (citing *State v. Cordeira*, 707 P.2d 373, 376 (1985)).

compelled to testify, in violation of his Fifth Amendment rights. It also rested its holding on a defendant's choice of *when* to testify, based on the Fourteenth Amendment's guarantee of due process. *Id*. at 612–13. *Brooks* therefore concerned two distinct constitutional rights. Yet the exception enunciated in *Kido* places a myopic focus on one half of the Court's holding by providing that whenever a defendant has already decided to testify, *both* his Fifth and Fourteenth Amendment rights are forfeited.

Here, Loher was harmed not only by being compelled to testify, but being compelled to do so *first*. *See id*. *Brooks* held that compelling a defendant to testify first interferes with his right to counsel in the planning of his defense—at a time when a defendant and his counsel are "without an opportunity to evaluate the actual worth of their evidence," and when "as a matter of professional judgment his lawyer may want to call him later in the trial." *Id.* at 612. By casting aside this part of the Court's constitutional holding, the exception is objectively unreasonable and, indeed, contrary to *Brooks* itself.

Finally, this exception sidesteps the appellate-review process set forth in cases such as *Chapman v. California*, 386 U.S. 18 (1967), and *Arizona v. Fulminante*, 499 U.S. 279 (1991), for evaluating whether claims of trial error are harmful. The Hawaii courts' post-hoc factual inquiry into when a defendant's decision to testify had "congealed" is independent of whether a *Brooks* violation existed in the first place. Rather, the exception asks whether the trial court's decision materially changed the outcome—that is, assuming there was constitutional error, whether such error was harmless. The Hawaii courts' inquiry therefore places the cart before the horse by conflating harmlessness with underlying

constitutional error. In effect, it assumes that when a trial error is deemed "harmless," there can be no violation of the constitutional scheme envisioned by *Brooks*. Worse yet, it does so by omitting a significant threshold question: whether a harmless-error or a structural-error analysis is more appropriate.

Under structural-error analysis, legal error is per se harmful. *See United States v. Sanchez-Cervantes*, 282 F.3d 664, 670 (9th Cir. 2002) (citing *Arizona*, 499 U.S. at 309–10). As the district court concluded, a *Brooks* error is likely structural and not amenable to harmlessness analysis. *Loher v. Thomas*, 23 F.Supp.3d at 1196–97; *see Bell v. Cone*, 535 U.S. 685, 695–96 & n.3 (2002) (citing *Brooks*). Therefore, the choice between structural error and harmless error is a non-trivial one. By shortcircuiting the constitutional analysis under *Chapman* and its progeny, the Hawaii court's exception serves to erode the standard of review in a way that materially, and invidiously, alters a reviewing court's conclusions.

## B.  Creation of the exigency

The state court also based its holding on a second *Kido* exception: whether a defendant is to blame for causing the "exigency" that compelled the premature testimony. *Loher IV* at *7. This exception, too, does not square with established precedent that a criminal defendant's waiver of fundamental constitutional rights must generally be knowing and intelligent. *See Iowa v. Tovar*, 541 U.S. 77, 80 (2004). Rather, the exception unreasonably compels a defendant to forfeit his Fifth and Fourteenth Amendment rights under *Brooks*, even where that situation arose as a mere mishap or "mistake," *id*. at *10.

The majority relies on the assumption that Loher was "primarily responsible" for the absence of his witnesses. Even assuming the trial court was not unreasonable in imposing an affirmative duty on defense counsel in this situation, counsel's failure to exercise this duty, standing alone, does not compel the waiver of the defendant's constitutional rights under *Brooks*. Such a conclusion, even in pursuit of a valid interest in efficiency, would be dissonant with the very balancing conducted by the *Brooks* Court, where even a state's substantive interest in preventing testimonial gamesmanship did not outweigh a defendant's Fifth and Fourteenth Amendment rights. 406 U.S. at 611–12.

Moreover, the Supreme Court has long maintained that a criminal defendant waives his constitutional rights only in the case of "intentional relinquishment or abandonment." *United States v. Olano*, 507 U.S. 725, 733 (1993) (quoting *Johnson v. Zerbst*, 304 U.S. 458 (1938)). "Waiver of the right to counsel, as of constitutional rights in the criminal process generally, must be a "knowing, intelligent ac[t] done with sufficient awareness of the relevant circumstances." *Iowa*, 541 U.S. at 80 (quoting *Brady v. United States*, 397 U.S. 742, 748 (1970)); *see also Zerbst*, 304 U.S. at 464 (holding that courts should not "presume acquiescence in the loss of fundamental rights"). The majority cites cases from other circuits in which defendants apparently waived their rights under *Brooks* through affirmative misconduct or failure to fulfill a court-imposed duty—for example, to secure the presence of witnesses on a date set by the court. *See, e.g.*, *Harris*, 202 F.3d at 174. Loher's case presents a far cry from such circumstances. Rather, the state court found that the Loher had waived the Fifth and Fourteenth Amendment rights announced in *Brooks* by no more than pure inadvertence.

### III.     Legal error under § 2554(d)(1)

The Hawaii courts, as a matter of law, misconstrued the scope of *Brooks* and improperly curtailed its holding through the creation of several freewheeling exceptions set forth in *Kido*. The *Kido* exceptions embody flawed constitutional standards. Most dangerously, they operate to withhold cases from *Brooks* scrutiny entirely once it is determined that an over-expansive exception is triggered. Because the state court applied the wrong legal standard to Loher's constitutional claims, AEDPA deference to its conclusions is unwarranted. *See Cooperwood v. Cambra*, 245 F.3d 1042, 1046 (9th Cir. 2001); *Wade v. Terhune*, 202 F.3d 1190, 1095 (9th Cir. 2000). Accordingly, I would hold that the state court's construction of *Brooks* is objectively unreasonable under 28 U.S.C. § 2554(d)(1), and must be reversed.

I respectfully dissent.