# FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

KENNETH PATRICK HIBBLER,
*Petitioner-Appellant,*

v.

JAMES BENEDETTI; NEVADA
ATTORNEY GENERAL,
*Respondents-Appellees.*

No. 11-16683

D.C. No.
3:07-cv-00467-
RCJ-VPC

OPINION

Appeal from the United States District Court
for the District of Nevada
Robert Clive Jones, Chief District Judge, Presiding

Argued and Submitted
June 12, 2012—San Francisco, California

Filed September 10, 2012

Before: Dorothy W. Nelson, Johnnie B. Rawlinson, and
Sandra S. Ikuta, Circuit Judges.

Opinion by Judge Ikuta

## COUNSEL

Ryan Norwood, Assistant Federal Public Defender, Las Vegas, Nevada, for petitioner-appellant Kenneth Patrick Hibbler.

Jared M. Frost, Deputy Attorney General, Carson City, Nevada, for respondents-appellees James Benedetti and Nevada Attorney General.

## OPINION

IKUTA, Circuit Judge:

Kenneth Hibbler claims that he was deprived of his Sixth Amendment right to effective assistance of counsel because his counsel induced him to enter a guilty plea at a time when counsel should have known that Hibbler was incompetent.[1] The Nevada Supreme Court rejected this claim, finding that Hibbler's allegations were belied by the record. This appeal requires us to determine whether it was unreasonable for the state court to make this finding absent an evidentiary hearing. We hold that it was not.

---

[1]Hibbler also alleges that his counsel was ineffective in various other ways. We address these other ineffective assistance claims in a memorandum disposition filed concurrently with this opinion.

## I

In the early morning hours of July 24, 2003, Kenneth Hibbler's eight-year-old daughter awoke in her father's apartment to find that her wrist had been slit. She asked her father for help. He told her to go back to sleep and, feeling somewhat groggy, she did.

Hibbler's daughter awoke sometime later to a knock on the door. It was Clark County Constable Coleman, there to evict Hibbler from his apartment. Hibbler went to the door and looked through the peephole. Rather than answering the door, he returned to his daughter, told her to be quiet, and cut her throat with a razor. He then took her to the bathroom, cut her throat again, and then carried her to the bedroom, where he attempted to cut her throat a third time, telling her it was for her own good. This time she fled.

At this point, Constable Coleman let himself into the apartment, where he encountered father and daughter both covered in blood. Coleman removed Hibbler's daughter from the apartment and secured medical care for her. In the meantime, Hibbler barricaded himself in the bathroom. By the time Hibbler was eventually removed from the bathroom, he had slit his own throat. Both Hibbler and his daughter survived the incident, but their injuries required extensive surgery and Hibbler's daughter was left with disfiguring scars on her neck.

Authorities arrested Hibbler and charged him with first degree kidnapping with use of a deadly weapon, attempted murder with use of a deadly weapon, and battery with use of a deadly weapon resulting in substantial bodily harm. The state appointed public defenders Jeffrey Rue and Amy Coffee to represent Hibbler.

Early in the proceedings, Rue requested a psychiatric evaluation to determine whether Hibbler was competent to stand trial and assist in his defense. Dr. Dodge Slagle, DO, per-

formed the competency evaluation on August 18, 2003. Hibbler reported that he understood that he was facing serious charges. He was able to accurately explain the role of the judge, prosecutor, and defense counsel, and he understood the use of plea bargains. Dr. Slagle concluded that Hibbler was competent.

On May 5, 2005, after lengthy plea negotiations, Hibbler pleaded guilty to one count of child abuse and neglect with substantial bodily harm. In return, the state dropped the other charges against Hibbler and stipulated to a 5 to 15-year sentence. The plea agreement stated that Hibbler was pleading guilty because he wanted to avoid the possibility of being convicted of additional, more serious, charges and spending additional time in prison. It stated that Hibbler understood the sentencing consequences of his plea, that he had not been guaranteed any specific sentence, and that he was waiving specified constitutional rights. It further stated that Hibbler had discussed the charges and the plea agreement with his attorneys, "believe[d] that pleading guilty and accepting this plea bargain [was] in [his] best interest," was entering his plea voluntarily, and was not under the influence of any drug that would "in any manner impair [his] ability to comprehend or understand this agreement or the proceedings surrounding [the] entry of this plea."

Attached to the plea agreement was a certificate of counsel, signed by Rue, averring that, "to the best of [Rue's] knowledge and belief," Hibbler was competent and understood the charges against him and the consequences of pleading guilty, was entering the plea voluntarily, and was not under the influence of any intoxicating drugs.

At the plea hearing, the state district court sought to ensure that Hibbler understood the nature of the plea agreement and the charges against him, and that Hibbler was making a knowing and voluntary plea. Hibbler assured the court that he understood the plea negotiations and was in agreement with

them. The court confirmed that Hibbler had received a copy of the amended information and asked whether Hibbler had any questions about the nature of the charges. Hibbler stated that he had already asked his lawyers about the stipulated sentence and that he understood the charges. He then entered his plea of guilty. The court explained that the offense Hibbler was pleading to was a felony and that, pursuant to the stipulation, Hibbler would receive a 15-year sentence and would "have to serve at least five years before [he was] even eligible for parole." Hibbler confirmed that he understood and that he had read and understood the agreement before he signed it. The court then asked if Hibbler had any further questions, to which Hibbler replied: "Just the time served that I have already served, will that be added to that?" The court assured Hibbler that he was entitled to credit for time served, and Hibbler stated that he had no further questions.

Because Hibbler intended to plead guilty but maintain his factual innocence pursuant to *North Carolina v. Alford*, 400 U.S. 25, 38 n.10 (1970), the court then asked the state to make a proffer of the factual basis for the charges. The state obliged. The court then turned back to Hibbler, seeking to assure he understood the nature of an *Alford* plea. The court explained that the purpose of the state's proffer was to assure the court that there was a factual basis for the plea, but that Hibbler did not have to admit the truth of those allegations, and asked Hibbler if he understood. Hibbler responded, "Not really." The court then gave a more detailed explanation, and Hibbler confirmed that he understood.

Finally, the court asked Hibbler whether he had an opportunity to discuss the plea with his lawyers and whether he believed the plea was in his best interest. Hibbler confirmed that both were true, and that he was entering his plea "because of the possible much greater sentence if [he] were convicted at trial on the original charges." Satisfied, the court accepted Hibbler's plea: "I will find that the Defendant's plea of guilty pursuant to the *Alford* decision is freely and voluntarily made.

I will find that he understands the nature of the offense, the consequences of his plea, and I will refer it for a pre sentence report."

When the matter came up for sentencing, Rue informed the court that Hibbler had expressed a desire to withdraw his plea. The court addressed Hibbler directly, asking if this was correct, and Hibbler confirmed, stating that he wanted to withdraw his plea because of "differences" between himself and counsel and because on the day that he pled guilty he "really was not at [his] full mental capacity." According to Hibbler, when he entered his plea, he was acting on the advice of his attorneys, and "kept saying yes, yes, yes, whatever" but he "had been up for two days" and was "on psychiatric drugs." The court granted a continuance.

On June 29, 2005, when the case came back before the court, Hibbler, now represented by substitute counsel, informed the court that he would not be moving to withdraw his plea.[2] Sentencing was continued once more, and on July 25, 2005, the court sentenced Hibbler to the stipulated term of five to fifteen years.

On May 15, 2006, Hibbler filed a petition for a writ of habeas corpus with the Clark County District Court, claiming, among other things, that Rue and Coffee were constitutionally ineffective for failing to assure that he was competent to enter his plea and thereby allowing him to enter a plea that was not knowing and voluntary. He alleged that, at the time he entered his plea, he was "on very powerful anti-psychotic medications, and exhibited many signs that he was mentally unstable." According to Hibbler, he was only able to get through the plea colloquy because "counsel stood beside [him] at the plea hearing, and directed him in everything that he should

---

[2]Hibbler now claims that this lawyer was also ineffective, a claim we address in the memorandum disposition filed concurrently with this opinion.

say." "Everytime a question was asked by the court, [he] would look over at counsel, and counsel would direct [him] to nod his head and say 'yes.' " The state opposed Hibbler's petition, and Hibbler responded by requesting an evidentiary hearing on this claim. On August 15, the Clark County court denied the petition without holding an evidentiary hearing, concluding that Hibbler's allegations were "bare or belied by the record and otherwise unworthy of belief."

Hibbler appealed to the Nevada Supreme Court, which affirmed in a reasoned decision. As to Hibbler's ineffective assistance claim, the court concluded that the evidence did not support Hibbler's assertion "that defense counsel . . . had reason to doubt appellant's competency when he entered his plea." Hibbler had "appropriately responded to the district court's questions" during the plea hearing "and requested clarification when he did not understand the proceedings." Moreover, Hibbler had "acknowledged in the written plea agreement that he was not under the influence of any drug which would impair his ability to understand the proceedings surrounding his entry of plea."

On May 21, 2009, Hibbler filed a habeas petition in the federal district court asserting the same ineffective assistance claim that he advanced in state court, which the district court denied. He appeals that denial.

II

We review the district court's denial of Hibbler's federal habeas petition de novo. *Yee v. Duncan*, 463 F.3d 893, 897 (9th Cir. 2006). Because the state court adjudicated Hibbler's ineffective assistance claim on the merits, we may not grant habeas relief unless the state court's resolution of the claim "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "(2) resulted in a decision that was based on an unreasonable

determination of the facts in light of the evidence presented in the State court proceeding." Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA), 28 U.S.C. § 2254(d). " 'We review the state court's last reasoned decision.' " *Towery v. Ryan*, 673 F.3d 933, 944 (9th Cir. 2012) (quoting *Crittenden v. Ayers*, 624 F.3d 943, 950 (9th Cir. 2010)); *see Ylst v. Nunnemaker*, 501 U.S. 797, 803-04 (1991). Here, the last reasoned state-court decision is that of the Nevada Supreme Court.

Hibbler's primary argument is that the state court's decision is not entitled to deference because it was based on an unreasonable determination of the facts. *See* § 2254(d)(2). Hibbler also claims that the state court's rejection of his ineffective assistance claim was an unreasonable application of clearly established law. *See* § 2254(d)(1). We address each argument in turn.

A

Under § 2254(d)(2), a federal court is relieved of AEDPA deference when a state court's adjudication of a claim "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." To show such an error occurred, the petitioner must establish that the state court's decision rested on a finding of fact that is "*objectively* unreasonable." *Lambert v. Blodgett*, 393 F.3d 943, 972 (9th Cir. 2004) (quoting *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003)); *see also Taylor v. Maddox*, 366 F.3d 992, 999 (9th Cir. 2004) (stating that "a federal court may not second-guess a state court's fact-finding process unless, after review of the state-court record, it determines that the state court was not merely wrong, but actually unreasonable").

Challenges under § 2254(d)(2) fall into two main categories. First, a petitioner may challenge the substance of the state court's findings and attempt to show that those findings

were not supported by substantial evidence in the state court record. *Taylor*, 366 F.3d at 999-1000. Second, a petitioner may challenge the fact-finding process itself on the ground that it was deficient in some material way. *Id.* at 999, 1001.

Regardless of the type of challenge, "[t]he question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold." *Schriro v. Landrigan,* 550 U.S. 465, 473 (2007). Thus, if a petitioner challenges the substance of the state court's findings, "it is not enough that we would reverse in similar circumstances if this were an appeal from a district court decision." *Taylor*, 366 F.3d at 1000. "Rather, we must be convinced that an appellate panel, applying the normal standards of appellate review, could not reasonably conclude that the finding is supported by the record." *Id*. Similarly, when the challenge is to the state court's procedure, "mere doubt as to the adequacy of the state court's findings of fact is insufficient; 'we must be satisfied that *any* appellate court to whom the defect [in the state court's fact-finding process] is pointed out would be unreasonable in holding that the state court's fact-finding process was adequate.' " *Lambert*, 393 F.3d at 972 (alteration in original) (quoting *Taylor*, 366 F.3d at 999).

**[1]** In some limited circumstances, we have held that the state court's failure to hold an evidentiary hearing may render its fact-finding process unreasonable under § 2254(d)(2). For example, we have held that a state court's resolution of a "credibility contest" between a petitioner and law enforcement officers was an unreasonable determination of fact where the evidence in the record was consistent with the petitioner's allegations. *Earp v. Ornoski*, 431 F.3d 1158, 1169-70 & n.8 (9th Cir. 2005). But we have never held that a state court must conduct an evidentiary hearing to resolve every disputed factual question; such a per se rule would be counter not only to the deference owed to state courts under AEDPA, but to Supreme Court precedent. In *Landrigan*, for example,

the Supreme Court held that a state court's rejection of the petitioner's allegations was reasonable for purposes of § 2254(d)(2), even though the state court had not held an evidentiary hearing. 550 U.S. at 471, 476. A state court's decision not to hold an evidentiary hearing does not render its fact-finding process unreasonable so long as the state court could have reasonably concluded that the evidence already adduced was sufficient to resolve the factual question. *See Earp*, 431 F.3d at 1170 (noting that a state court is not required to hold an evidentiary hearing when it is possible to resolve the factual question "based on 'documentary testimony and evidence in the record' " (citation omitted)); *Perez v. Rosario*, 459 F.3d 943, 950 (9th Cir. 2006) (holding that it is reasonable for a state court to resolve a disputed factual question without an evidentiary hearing when the petitioner's allegations are "incredible in light of the record, or . . . when the record already before the court is said to establish a fact conclusively"). The ultimate issue is whether the state's fact-finding procedures were reasonable; this is a fact-bound and case-specific inquiry.

[2] Because AEDPA does not provide any specific guidance on what sort of procedural deficiencies will render a state court's fact-finding unreasonable, we have sometimes turned for guidance to cases considering a similar issue in a different context: when a federal district court considering a habeas petition must or should conduct an evidentiary hearing. *See Earp*, 431 F.3d at 1166-67, 1169-70 (looking to *Townsend v. Sain*, 372 U.S. 293, 313 (1963), which governs when a federal district court reviewing a habeas petition de novo must grant an evidentiary hearing, in determining whether the state court decision was based on an unreasonable determination of the facts). In this context, the Supreme Court has recently clarified that, "[i]n deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the

applicant to federal habeas relief." *Landrigan*, 550 U.S. at 474.**³**
More specifically, "[i]f the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." *Id.*
" '[A]n evidentiary hearing is not required on issues that can be resolved by reference to the state court record.' " *Id.* (quoting *Totten v. Merkle*, 137 F.3d 1172, 1176 (9th Cir. 1998)).

**[3]** While this framework for determining when a district court errs in failing to conduct an evidentiary hearing provides useful guidance, it is useful only by analogy and does not answer conclusively whether the state court's adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." § 2254(d)(2). We owe less deference to federal district courts than to state courts. *See Lambert*, 393 F.3d at 972 ("[T]he unreasonable determination clause of § 2254(d)(2) teaches us that we must be particularly deferential to our state court colleagues."). Section 2254(d) is a " 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Harrington v. Richter*, 131 S. Ct. 770, 786 (2011) (quoting *Jackson v. Virginia*, 443 U.S. 307, 322 n.5 (1979) (Stevens, J., concurring in judgment)). Unlike our review of a district court's determination that an evidentiary hearing is unnecessary, which is for abuse of discretion, *see Landrigan*, 550 U.S. at 474-75, we may not "second-guess a state court's fact-finding process" unless we determine "that the state court was not merely wrong, but actually unreasonable." *Taylor*, 366 F.3d at 999. Nevertheless, the rules governing when a district court must grant an evidentiary hearing are informative: if a district court would be within its discretion in denying an evidentiary hearing, a state court's similar decision is probably not objectively unreasonable.

---

**³**We did not discuss *Landrigan*'s application to § 2254(d)(2) claims in *Earp*, for the simple reason that *Landrigan* had not yet been decided.

**[4]** Accordingly, in considering a petitioner's argument that the state court's failure to hold an evidentiary hearing rendered its factual findings unreasonable, we may first consider whether a similarly situated district court would have been required to hold an evidentiary hearing. *See Earp*, 431 F.3d at 1167. We begin with the rule that no such hearing is required "[i]f the record refutes the applicant's factual allegations or otherwise precludes habeas relief." *Landrigan*, 550 U.S. at 474; *see also Perez*, 459 F.3d at 950; *see also Lambert*, 393 F.3d at 965-66 (holding that an evidentiary hearing is not a prerequisite to an adjudication on the merits triggering AEDPA deference). The ultimate question, however, is whether an appellate court would be *unreasonable* in holding that an evidentiary hearing was not necessary in light of the state court record. *Taylor,* 366 F.3d at 1000.

B

We now apply these principles to Hibbler's challenge to the state court's fact-finding process under § 2254(d)(2). He argues that the state court's finding that counsel had no reason to doubt that he was competent to make a plea was unreasonable because it was made without holding an evidentiary hearing. Hibbler claims that the state court had to hold such a hearing to evaluate his allegation that his lawyers were aware that he was suffering from psychological issues and taking anti-psychotic medications at the time of his plea.

**[5]** We begin by considering whether an evidentiary hearing would have been required under the standard applicable to district courts, mindful that no such hearing is required "[i]f the record refutes the applicant's factual allegations or otherwise precludes habeas relief." *Landrigan*, 550 U.S. at 474. Here, the evidence before the state court, taken as a whole, clearly belied Hibbler's allegations. Dr. Slagle's competency evaluation not only concluded that Hibbler was competent but reflected that Hibbler understood the nature and seriousness of the charges against him and the role of the court and the

attorneys. Hibbler adduced no evidence that his mental status had actually changed since that competency evaluation or that his counsel had reason to believe it had changed. Nor does the state court record contain any evidence that he had been taking "powerful anti-psychotic medications" at the time of his plea. Rather, the medical records show that Hibbler was prescribed a number of drugs, but was not on any anti-psychotic medication. Indeed, both Hibbler and his counsel signed sworn statements on the day Hibbler entered his plea averring that Hibbler was not under the influence of any drug that would affect his ability to understand his actions.

Hibbler's allegation that his lawyers directed his answers during the plea colloquy (and therefore were aware that Hibbler was not competent to answer the questions on his own) is similarly refuted by the record. The transcript of the change-of-plea hearing shows that Hibbler gave detailed answers when appropriate, sought clarification when he did not understand something, and raised two sentencing issues on his own.[4]

[6] Because Hibbler's factual allegations are refuted by the record, a district court hearing Hibbler's petition de novo could have reasonably determined that Hibbler was not entitled to an evidentiary hearing on his claim. *Landrigan*, 550 U.S. at 474. A state court could also have reasonably deter-

---

[4]For example, on the two occasions when the court asked Hibbler whether he had any specific questions, Hibbler spoke up and gave articulate answers. The first time, Hibbler told the court that the stipulated sentence had already been explained to him: "Well, I think the—I asked the question about the sentence being five to 15. They explained that." The second time, Hibbler asked the court whether he would receive credit for time served. When Hibbler did not understand what was happening, he made that clear. Thus, when the judge asked Hibbler about the knowing and voluntary nature of the plea, Hibbler asked the judge to speak up, noting that he was "hard of hearing." Similarly, when the judge asked Hibbler if he understood the nature of an *Alford* plea, Hibbler said "Not really," and sought further explanation before stating that he understood.

mined that an evidentiary hearing would be fruitless. Accordingly, under the deferential standard of § 2254(d)(2), the state court's denial of Hibbler's motion for an evidentiary hearing was not objectively unreasonable. An appellate court could reasonably conclude that the state court's fact-finding process was sufficient, *Taylor*, 366 F.3d at 1000, and we therefore conclude that the state court did not make an unreasonable determination of the facts in light of the evidence presented in state court.

C

We next turn to Hibbler's argument that the Nevada Supreme Court's rejection of his ineffective assistance of counsel claim was an unreasonable application of *Strickland v. Washington*, 466 U.S. 668 (1984).

In order to establish ineffective assistance under *Strickland*, "a defendant must show both deficient performance and prejudice." *Knowles v. Mirzayance*, 556 U.S. 111, 122 (2009). In assessing whether counsel's performance was deficient, courts must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance" and make every effort "to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Strickland*, 466 U.S. at 689. A claim that counsel was deficient for failing to move for a competency hearing will succeed only "when 'there are sufficient indicia of incompetence to give objectively reasonable counsel reason to doubt defendant's competency, and there is a reasonable probability that the defendant would have been found incompetent to stand trial had the issue been raised and fully considered.' " *Stanley v. Cullen*, 633 F.3d 852, 862 (9th Cir. 2011) (quoting *Jermyn v. Horn*, 266 F.3d 257, 283 (3d Cir. 2001)).

In the context of a collateral attack on a guilty plea, *Strickland*'s prejudice prong requires that the petitioner show that

"there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 58-59 (1985).

Under AEDPA, we review the state court's application of *Strickland* for reasonableness. As explained by the Supreme Court, "[t]he question 'is not whether a federal court believes the state court's determination' under the *Strickland* standard 'was incorrect but whether that determination was unreasonable—a substantially higher threshold.' " *Mirzayance*, 556 U.S. at 123 (quoting *Landrigan*, 550 U.S. at 473). Put differently, we ask not "whether counsel's actions were reasonable" but "whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Richter*, 131 S. Ct. at 788. Accordingly, a "doubly deferential judicial review" applies to *Strickland* claims rejected by the state court. *Mirzayance*, 556 U.S. at 123.

**[7]** Hibbler argues that he received ineffective assistance of counsel because his attorneys failed to ensure he was competent before he pleaded guilty and that he was prejudiced by this failure because his incompetence resulted in a plea that was not knowing and voluntary.[5] As we have explained, the state court reasonably concluded that Hibbler's lawyers had no reason to doubt that he was competent at the time he pleaded guilty. Thus, even on de novo review, Hibbler could not establish that his counsel's performance was deficient. *See*

---

[5]Whether a defendant is competent to plead guilty and whether that defendant has actually entered a knowing and voluntary plea are different inquiries. *See Godinez v. Moran*, 509 U.S. 389, 400 (1993). The former addresses whether the defendant "has the *ability* to understand the proceedings," while the latter addresses "whether the defendant actually *does* understand the significance and consequences of a particular decision and whether the decision is uncoerced." *Id.* at 401 n.12. Competence is a prerequisite to a knowing and voluntary plea, however; a defendant who lacked the ability to understand the proceedings would also not be able to understand the consequences of decisions made during the proceedings.

*Stanley*, 633 F.3d at 862. Accordingly, the Nevada Supreme Court's rejection of Hibbler's claim was not an unreasonable application of *Strickland. See Berghuis v. Thompkins*, 130 S. Ct. 2250, 2264-65 (2010).

## III

**[8]** The ineffective assistance of counsel claim Hibbler raises in this appeal was also raised in his state habeas petition, and the Nevada Supreme Court rejected it on the merits. Because we conclude that the state court's rejection of this claim withstands scrutiny under § 2254(d), a writ of habeas corpus "shall not be granted." § 2254(d).

**AFFIRMED.**