FOR PUBLICATION

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

FILED

NOV 15 2022

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| EARNEST L. PRESCOTT,<br><br>        Petitioner-Appellant,<br><br>v.<br><br>KELLY SANTORO, Acting Warden,<br><br>        Respondent-Appellee. | No.   19-17509<br><br>D.C. No. 5:16-cv-01359-EJD<br><br><br>OPINION |

Appeal from the United States District Court
for the Northern District of California
Edward J. Davila, District Judge, Presiding

Argued and Submitted June 17, 2022
San Francisco, California

Before:  Jay S. Bybee, Consuelo M. Callahan, and Daniel P. Collins, Circuit Judges.

Opinion by Judge Callahan;
Concurrence by Judge Collins

# SUMMARY[*]

## Habeas Corpus

The panel affirmed the district court's denial of Earnest Prescott's 28 U.S.C. § 2254 habeas corpus petition challenging his California murder conviction, in a case in which the district court issued a certificate of appealability as to Prescott's claims that (1) letters allegedly written by Prescott's codefendant, Jason Jones, established that he was innocent; and (2) his trial attorney provided ineffective assistance of counsel by failing to have the letters authenticated and introduced into evidence.

The California Court of Appeal summarily denied Prescott's habeas petition, and the California Supreme Court denied Prescott's petition for review.

The panel applied the standards set forth in the Antiterrorism and Effective Death Penalty Act, 28 U.S.C. § 2254(d).

Prescott, who conceded that 28 U.S.C. § 2254(d)(1) does not apply, argued that the state court made an unreasonable determination of facts under 28 U.S.C. § 2254(d)(2) by rejecting his claim of actual innocence. The panel held that Prescott did not waive his actual innocence argument in his briefing to the district court. Turning to the merits, the panel wrote that Prescott cannot challenge the substance of the state courts' factual findings because the state courts made no factual findings. In the absence of substantive factual findings by the state courts, Prescott contended that the state courts' factfinding process was unreasonable because no court could have reasonably found that Prescott's allegations failed to establish a prima facie case of actual innocence. He argued that the summary denial was necessarily and implicitly based on a factual determination that Jones's confession was not credible, and that the state court could not reasonably make this finding without first holding an evidentiary hearing. The panel held that the state court's decision not to make specific factual findings did not constitute an unreasonable factfinding procedure under § 2254(d)(2), and the state court's decision not to conduct an evidentiary hearing in service of an unnecessary

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

credibility determination was likewise not unreasonable.

The panel wrote that even if Prescott could show that the state court made an unreasonable determination of fact under § 2254(d)(2) and obtain de novo review of his freestanding actual innocence claim, he would need to demonstrate such a claim is cognizable in a federal habeas proceeding in the non-capital context. The panel noted that this is an open question, but that the panel need not resolve it here because Prescott's new evidence does not meet the extraordinarily high threshold showing of actual innocence that would be necessary to prevail on such a claim.

The panel held that it was not unreasonable for the California Court of Appeal to reject Prescott's ineffective assistance of counsel claim concerning the authenticity of the letters. The panel wrote that a retired handwriting expert's 30 years of experience and expert testimony in over 300 cases was a sufficient and reasonable basis for the state court to have found that the expert was qualified, or least that Prescott's attorney did not act deficiently in believing the expert to be qualified and relying on his report that he could not reach a conclusion about whether the letters were written by Jones.

Judge Collins concurred in the court's opinion, except as to the section that addresses a freestanding federal actual innocence claim, an issue that is unnecessary to decide.

---

## COUNSEL

---

Elizabeth Richardson-Royer (argued), San Francisco, California, for Petitioner-Appellant.

Jill M. Thayer (argued) and Allan Yannow, Deputy Attorney Generals; Peggy S. Ruffra, Supervising Deputy Attorney General; Jeffrey M. Laurence, Senior Assistant Attorney General; Lance E. Winters, Chief Assistant Attorney General; Rob Bonta, Attorney General of California; Office of the California Attorney General, San Francisco, California; for Respondent-Appellee.

CALLAHAN, Circuit Judge:

Earnest Prescott was convicted of the murder of James Johnson in 2012. Following his conviction, he filed a petition for writ of habeas corpus in state court arguing that two letters allegedly written by his codefendant, Jason Jones, exonerated Prescott. Prescott asserted, among other things, that (1) the letters established that he was innocent, and (2) his trial attorney provided ineffective assistance of counsel by failing to have the letters authenticated and introduced into evidence.

After the California Court of Appeal summarily denied his petition and the California Supreme Court denied review, Prescott filed a habeas petition in federal court under 28 U.S.C. § 2254. The district court denied the petition, but granted a certificate of appealability on Prescott's actual innocence and ineffective assistance of counsel claims. We have jurisdiction under 28 U.S.C. §§ 1291 and 2253, and we affirm.

**I**

**A**

On June 6, 2010, Prescott—who was then 16 years old—was riding in a vehicle with Laquisha Williams, Jones, and several other individuals associated

with the "Ghost Town" gang in Oakland.[1]  While the car was driving through the

territory of a rival group known as the "Acorn" gang, Jones thought he saw an

Acorn gang member with whom he had fought while they were both previously

incarcerated.  The car stopped, and Prescott and Jones exited the vehicle and

entered a nearby housing complex in pursuit.  They ran into James Johnson—*not*

the gang member that Jones thought he had seen—as Johnson was walking from

his home in the housing complex to the store.  Johnson was shot multiple times,

and Prescott and Jones fled back to their vehicle.  Johnson later died from his

wounds.

A resident of the housing complex named Mignon Perry witnessed the

shooting.  Perry said she made eye contact with the shooter, whom she described to

police as an African American male between the ages of 16 and 18 years old, 6 feet

and 1 inch tall, wearing a white T-shirt and blue jeans, and carrying a silver

handgun.  Perry, who was acquainted with Williams, later heard that Williams may

have been involved in the incident and looked up her MySpace page online.  On

the MySpace page, Perry saw a picture of Williams together with Prescott and

recognized Prescott as the shooter.

---

[1] These facts are drawn from the California Court of Appeal's opinion on direct appeal following Prescott's trial.  *People v. Prescott*, No. A135991, 2015 WL 1736223, at *1 (Cal. Ct. App. Apr. 14, 2015), *as modified on denial of reh'g* (May 11, 2015); *see also Hernandez v. Small*, 282 F.3d 1132, 1135 n.1 (9th Cir. 2002) (state court's determination of facts is presumptively accurate).

Williams initially told police that she had seen Prescott return to the vehicle with a gun that matched Perry's description of the weapon, though at trial she recanted that statement. Police ultimately found the gun in the possession of another individual named Nickie Donald while investigating a different shooting. Prescott was listed as a contact in Donald's phone.

While awaiting trial, Prescott temporarily escaped from the juvenile facility where he was being detained. After his escape, law enforcement officers found two handwritten notes in his cell in which he admitted to "taking a human being life," and asked for forgiveness and a not guilty verdict.

Prescott and Jones were tried together for Johnson's death in 2012. A jury found Prescott guilty of murder and discharging a firearm causing death. The court subsequently sentenced Prescott to an aggregate term of 50 years to life, consisting of two consecutive terms of 25 years to life, one for the murder and one for the firearm enhancement.[2] Jones was acquitted.

The California Court of Appeal affirmed Prescott's conviction on direct appeal, *Prescott*, 2015 WL 1736223, at *10, and the California Supreme Court

---

[2] Prescott will be eligible for parole during the 25th year of his incarceration. *See People v. Franklin*, 63 Cal. 4th 261, 277–78 (2016); Cal. Penal Code § 3051.

denied Prescott's petition for review.[3]

**B**

Concurrently with his direct appeal, Prescott filed a habeas petition in state court. The habeas petition largely focused on the two letters allegedly written by Jones that Prescott claims absolve him of the shooting but were not introduced at trial.

The first of these was an unsigned letter dated September 19, 2011. Prescott's girlfriend faxed a copy of the letter to Prescott's trial counsel, John Plaine, on September 28, 2011. Prescott told Plaine that his girlfriend had received it from Jones. In the letter, the author apologized for accusing Prescott of being the shooter and claimed that he felt pressured to accuse Prescott out of fear for his family's safety. The author asserted that an individual named Nick (nicknamed "Poony") was the actual shooter. This is apparently a reference to Nickie Donald, as the letter states that Nick is the same person who was later found in possession of the murder weapon. The author stated that he was willing to testify on Prescott's behalf. Because Jones told police during his initial interview that

---

[3] In addition to denying Prescott's petition for review, the California Supreme Court granted the State's petition for review regarding the Court of Appeal's decision to vacate Prescott's sentence and remand for resentencing. On remand, the California Court of Appeal again affirmed Prescott's conviction and this time affirmed his sentence as well. *People v. Prescott*, No. A135991, 2016 WL 6472877, at *1 (Cal. Ct. App., Nov. 2, 2016).

4

Prescott was the shooter, the letter's apology for naming Prescott as the shooter is consistent with Prescott's belief that Jones authored the letter.

Prescott gave Plaine a second handwritten letter on May 8, 2012, the day the trial court heard pretrial motions and the day before the parties began voir dire in Prescott and Jones's joint trial. This letter was dated January 25, 2012, and identified Jones as the author. The letter stated that Jones wanted to "come clean" and confess to shooting Johnson.

Plaine was unsure how to proceed after receiving the letters. Because the letters each identified a different shooter, Plaine was unsure what probative value these inconsistent statements would have. Plaine also feared that disclosing the letters would mean that Jones and Prescott would no longer be detained together, which Plaine thought would cut off Prescott's ability to learn more about Jones's trial strategy and pass that information along to Plaine.

Plaine also had concerns about how to get the letters admitted into evidence. At that point, Plaine did not know whether Jones would testify, and because Prescott repeatedly refused to testify, Plaine could not authenticate and introduce the letter through Prescott's testimony. Plaine reached out to a retired handwriting expert the public defender's office had worked with in the past, David DeGarmo, and asked him to assess whether Jones was the author of the two letters. After reviewing numerous samples of Jones's handwriting, DeGarmo was unable to say

5

whether the September 19, 2011, and January 25, 2012, letters were written by Jones. After speaking with DeGarmo, Plaine later recalled that he had "no reason to think that further investigation would be useful," and he did not attempt to introduce the letters.

In support of his habeas petition, Prescott also submitted various other documents. One of these was a declaration from another attorney opining that Plaine failed to adequately investigate whether the letters were genuine and that Plaine's hope to introduce them through the testimony of either Prescott or Jones "was not a justifiable tactical decision." Prescott also obtained a declaration from another handwriting expert who opined that it was "highly probable" that Jones wrote the prior letters. Prescott's new expert further questioned whether DeGarmo applied the appropriate methodology and whether DeGarmo was adequately trained on modern handwriting analysis and techniques at the time he analyzed the letters.

Additionally, Prescott submitted a declaration from Jones dated January 8, 2014—well after Jones had been acquitted—which stated that Jones had committed the shooting and had written the letters. Finally, Prescott submitted his own declaration stating that he was innocent of the shooting.

The California Court of Appeal summarily denied Prescott's habeas petition, and the California Supreme Court denied Prescott's petition for review.

# C

In 2016, Prescott filed a federal habeas petition under 28 U.S.C. § 2254 asserting that: (1) Prescott's due process rights were violated by Plaine's failure to introduce Jones's letters, which "establish Prescott's actual innocence"; and (2) Plaine provided ineffective assistance by failing to investigate and authenticate the letters.[4]

The district court denied the petition. *See Prescott v. Santoro*, No. 5:16-CV-01359, 2019 WL 6771826 (N.D. Cal. Dec. 12, 2019). Regarding Prescott's first claim, there was some confusion as to what Prescott's actual argument was. The district court found that Prescott had "disclaim[ed] bringing a freestanding actual innocence claim." *Id.* at \*5. The court instead interpreted Prescott's argument to be that he had submitted enough new evidence with his state habeas petition to establish a prima facie case for relief, and that therefore the state court had unreasonably applied California law by failing to order the State to show cause as to why the petition should not be granted. *See People v. Duvall*, 9 Cal. 4th 464, 474–75 (1995) (explaining procedures governing habeas petitions under California

---

[4] Prescott's federal habeas petition also presented a third claim asserting that his Sixth Amendment rights were violated when the trial court limited Prescott's ability to cross-examine Williams. The district court held the state trial court reasonably determined the additional evidence Prescott sought to introduce was cumulative, and Prescott does not appeal the denial of this claim.

law).  The district court denied the claim because it was not based on federal law as required by 28 U.S.C. § 2254.

On Prescott's second claim, the district court held that the state court reasonably rejected the ineffective assistance of counsel claim.  The district court found that "there was considerable evidence that Mr. DeGarmo was well qualified to analyze the letters, and it was not unreasonable for the state court to reach that conclusion," citing the fact that DeGarmo had testified as an expert in over 300 cases as well as his decades of experience.  *Prescott*, 2019 WL 6771826, at *8.  Because DeGarmo could not authenticate the letters, "it was not unreasonable for the Court of Appeal to conclude that Mr. Plaine performed reasonably by not continuing to investigate the authorship of the letter" after receiving DeGarmo's assessment.  *Id.*

After denying the petition, the district court issued a certificate of appealability as to these two claims, and Prescott appealed.

## II

We review the district court's denial of a habeas petition de novo.  *Dixon v. Shinn*, 33 F.4th 1050, 1053 (9th Cir. 2022).  Under the Antiterrorism and Effective Death Penalty Act ("AEDPA"), which is applicable here, habeas relief may not be granted:

> with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). "[E]ven a strong case for relief does not mean the state court's" denial of a claim "was unreasonable." *Harrington v. Richter*, 562 U.S. 86, 102 (2011). Instead, to obtain relief in federal court, a petitioner bears the burden of demonstrating that the state court's ruling "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 103.

### III

Prescott first claims that the state court unreasonably denied his actual innocence claim. His arguments on this point are complex.

Prescott must satisfy the requirements of either § 2254(d)(1) or § 2254(d)(2) to obtain federal habeas relief. Prescott concedes that his actual innocence claim is not based on clearly established federal law and thus he cannot obtain relief under § 2254(d)(1). *See Herrera v. Collins*, 506 U.S. 390, 400 (1993). Instead, Prescott argues that the state court made an unreasonable determination of the facts under § 2254(d)(2) by rejecting his claim of actual innocence. He asserts that by summarily denying his petition, the state court necessarily found that Prescott had

9

failed to allege facts which, if true, stated a prima facie actual innocence claim. *See Duvall*, 9 Cal. 4th at 474–75. This, Prescott contends, constituted an implicit unreasonable determination of the facts given that Jones's letters, if credited as true, demonstrate that Prescott was not the shooter. Prescott then asserts that, having satisfied § 2254(d)(2), AEDPA is no longer a barrier to his claims for relief and that we may review the claims in his petition de novo. This includes his freestanding federal actual innocence claim, even though such review would not be available under § 2254(d)(1).

The State argues that we need not address the merits of Prescott's contentions because he expressly waived his actual innocence argument in his district court briefing. We hold that Prescott did not waive the argument but that it fails for other reasons.

## A

As a threshold matter, we address the State's argument that Prescott disclaimed an actual innocence claim in his briefing to the district court. Generally, "[h]abeas claims that are not raised before the district court in the petition are not cognizable on appeal." *Robinson v. Kramer*, 588 F.3d 1212, 1217 (9th Cir. 2009) (quoting *Cacoperdo v. Demosthenes*, 37 F.3d 504, 507 (9th Cir. 1994)).

The State's argument is based on a passage from Prescott's traverse in which

10

Prescott stated that "[t]he Attorney General acknowledges that Prescott has not raised a freestanding actual innocence [claim]." The district court, in attempting to decipher Prescott's arguments, interpreted this passage to mean that Prescott had disclaimed an actual innocence claim.

Although Prescott's brief—as Prescott now admits—lacked "clarity" and was "somewhat convoluted," we find that he did not waive his federal actual innocence claim. Prescott's federal habeas petition plainly attempted to reassert the same actual innocence claim that he exhausted (with express reference to *Herrera*) in state court,[5] and again relied on both federal and state caselaw in arguing that his "claim of actual innocence warrants relief"—even if the federal cases cited in the petition are not the most apposite. Moreover, Prescott's traverse contains several other references to his actual innocence arguments, including an unambiguous statement that "Jones' confessions establish Prescott's factual and actual innocence." Finally, the district court characterized the first claim in

_____

[5] As the parties agree, the state court's denial of Prescott's actual innocence claim is properly construed as having rejected such a claim on the merits under both state and federal law. Prescott's state petition in the California Court of Appeal asserted that imprisoning the actually innocent violates the Fourteenth Amendment, and this claim was reasserted (with citation to *Herrera*) in Prescott's petition for review in the California Supreme Court. This was sufficient to exhaust his claim. *See Fields v. Waddington*, 401 F.3d 1018, 1021 (9th Cir. 2005) ("[T]o alert the state court, a petitioner must make reference to provisions of the federal Constitution or must cite either federal or state case law that engages in a federal constitutional analysis.").

Prescott's petition as re-raising his state court actual innocence claim, and issued a certificate of appealability on that claim without any limitation. *Prescott*, 2019 WL 6771826, at *5, *9. Under these circumstances, we hold that Prescott has not waived his federal actual innocence claim.[6]

**B**

Turning to the merits, Prescott must show that the state court's decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding" under § 2254(d)(2), given his concession that § 2254(d)(1) does not apply. A petitioner can do so in two ways. *Hibbler v. Benedetti*, 693 F.3d 1140, 1146 (9th Cir. 2012). "First, a petitioner may challenge the substance of the state court's findings and attempt to show that those findings were not supported by substantial evidence in the state court record. Second, a petitioner may challenge the fact-finding process itself on the ground that it was deficient in some material way." *Id.* (citation omitted).

"The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold." *Schriro v. Landrigan*, 550 U.S.

---

[6] The State argues that, even if Prescott did preserve this claim below, the district court did not actually address its merits. We need not decide whether that reading of the district court's order is correct because, even if it is, we may affirm a denial of habeas relief "on any ground supported by the record." *Holley v. Yarborough*, 568 F.3d 1091, 1098 (9th Cir. 2009).

465, 473 (2007). A petitioner challenging the substance of the state court's findings must show "that an appellate panel, applying the normal standards of appellate review, could not reasonably conclude that the finding is supported by the record." *Hibbler*, 693 F.3d at 1146 (quoting *Taylor v. Maddox*, 366 F.3d 992, 1000 (9th Cir. 2004)). A petitioner challenging the adequacy of the fact-finding process must show no appellate court could reasonably hold "that the state court's fact-finding process was adequate." *Lambert v. Blodgett*, 393 F.3d 943, 972 (9th Cir. 2004) (quoting *Taylor*, 366 F.3d at 1000)).

Prescott cannot challenge the substance of the state courts' factual findings because the state courts made no factual findings. The California Court of Appeal summarily denied Prescott's state habeas petition in a one-sentence order, and the California Supreme Court denied Prescott's petition for review. The summary denial constituted a determination by the state court "that the claims made in that petition [did] not state a prima facie case entitling [Prescott] to relief." *In re Clark*, 5 Cal. 4th 750, 770 (1993), *superseded by statute on other grounds as stated in In re Friend*, 11 Cal. 5th 720, 742 (2021). The California Court of Appeal's decision that Prescott's new factual allegations, taken as true, were insufficient to state an actual innocence claim constituted a legal determination, not a factual one. *See Duvall*, 9 Cal. 4th at 475; *see also In re Clark*, 5 Cal. 4th at 769 n.9.

In the absence of substantive factual findings by the state courts, Prescott

13

contends that the state courts' factfinding process was unreasonable because no court could have reasonably found that Prescott's allegations failed to establish a prima facie case of actual innocence. Prescott argues that the summary denial was necessarily and implicitly based on a factual determination that Jones's confession was not credible, and that the state court could not reasonably make this finding without first holding an evidentiary hearing.

Our precedent establishes that a state court can engage in an unreasonable factfinding procedure under § 2254(d)(2) in several different ways. *Taylor v. Maddox*, 366 F.3d 992, 1000–01 (9th Cir. 2004), *overruled on other grounds as recognized by Murray v. Schriro*, 745 F.3d 984, 999–1000 (9th Cir. 2014). For example, a petitioner can raise a § 2254(d)(2) challenge to a state court's factfinding procedure "where the state court should have made a finding of fact but neglected to do so." *Id.* at 1000. Also, "[i]n some limited circumstances, we have held that the state court's failure to hold an evidentiary hearing may render its factfinding process unreasonable under § 2254(d)(2)." *Hibbler*, 693 F.3d at 1147. But Prescott has not established that either scenario applies here.

First, Prescott has not shown that the state court had an obligation to make any specific factual findings. In assessing Prescott's innocence claim, the state court did not view Prescott's new evidence—principally in the form of Jones's letters—in a vacuum. "[N]ewly discovered evidence does not warrant relief unless

14

it is of such character as will completely undermine the entire structure of the case upon which the prosecution was based." *In re Lawley*, 42 Cal. 4th 1231, 1239 (2008) (citation omitted). Nor is the court required to accept "conclusory allegations." *Duvall*, 9 Cal. 4th at 474 (quoting *People v. Karis*, 46 Cal. 3d 612, 656 (1988)). The state court reviews the entire "record of the trial in order to assess the merits of the petitioner's claims." *In re Clark*, 5 Cal. 4th at 770. "If 'a reasonable jury could have rejected' the evidence presented, a petitioner has not satisfied his burden." *In re Lawley*, 42 Cal. 4th at 1239 (quoting *In re Clark*, 5 Cal. 4th at 798 n.33).

Accordingly, the state court could not consider Jones's second letter—in which he claims to have shot Johnson—in isolation when assessing whether Prescott had presented a prima facie case of his innocence. Rather, the state court had to consider the fact that the two letters from Jones that Prescott introduced with his state habeas petition each identified a different person as the shooter. Crediting the assertions made in both letters as true was impossible—the first letter stated that Nickie Donald ("Poony") was the shooter, and the second letter stated that Jones was the shooter. They could not have both been the shooter as there was only one shooter involved in the murder.

Further, the state court was also required to consider the other compelling evidence of Prescott's guilt in the record in assessing whether Prescott's new

15

evidence was sufficient to create a prima facie case of actual innocence. This other

evidence included, most significantly, credible testimony from Perry that she saw

Prescott shoot Johnson,[7] as well as a letter written by Prescott in jail admitting that

he had taken a human life. *Prescott*, 2015 WL 1736223, at *2. In the context of

the entire record, we cannot say that Jones's inconsistent letters, Jones's post-

acquittal confession, and the other materials Prescott presented with his state

habeas petition compelled the conclusion that Prescott had set forth a prima facie

case of actual innocence such that the state court could not deny his petition

without explicitly assessing and rejecting his factual contentions. The California

Court of Appeal could have reasonably held that Prescott's allegations, even if

credited, did not "undermine the entire prosecution case and point unerringly to

innocence or reduced culpability." *In re Lawley*, 42 Cal. 4th at 1239.

Accordingly, the state court's decision not to make specific factual findings did not

constitute an unreasonable factfinding procedure under § 2254(d)(2).

Nor was the state court's decision not to conduct an evidentiary hearing to

assess Prescott's contentions unreasonable. As noted, the state court could have

reasonably concluded that it did not need to make a credibility finding to reject

---

[7] Prescott's briefing attacks Perry's credibility at length. But Prescott's counsel also challenged Perry's credibility at trial, and the jury weighed these arguments and reasonably found them unpersuasive. *See Prescott*, 2015 WL 1736223, at *6; 28 U.S.C. § 2254(d)(2).

Prescott's claims of actual innocence based on the circumstances of this case. Thus, the decision not to conduct an evidentiary hearing in service of that unnecessary credibility determination was reasonable. *See Hibbler*, 693 F.3d at 1147 ("A state court's decision not to hold an evidentiary hearing does not render its fact-finding process unreasonable so long as the state court could have reasonably concluded that the evidence already adduced was sufficient to resolve the factual question.").

Prescott chiefly relies on *Nunes v. Mueller*, 350 F.3d 1045 (9th Cir. 2003), for the proposition that the summary denial of a habeas petition violates § 2254(d)(2) where a state court erroneously determines that the petitioner's factual allegations, taken as true, fail to state a prima face claim for relief. *Nunes* is inapposite. There, we held that a state court's denial of an ineffective assistance of counsel claim under *Strickland v. Washington*, 466 U.S. 668 (1984), constituted an "objectively unreasonable" determination of the facts under § 2254(d)(2) where the state court actually made factual findings although it claimed to only be making a "prima facie sufficiency" ruling. *Nunes*, 350 F.3d at 1056. The findings made by the state court in *Nunes* distinguish the order there from the summary denial at issue in Prescott's case. For example, the state court in *Nunes* "concluded on the record that Nunes could not show he would have accepted the state's plea offer had his attorney communicated it to him accurately," and "found that materials Nunes

17

included in the record that showed his counsel's delinquency were 'of dubious relevance' and rejected as 'simply not credible' Nunes' claim that he could not reach his attorney to clarify the plea offer." *Id.* at 1053–54. We assessed these specific factual findings in light of the evidence in the record and held that the findings were unreasonable under § 2254(d)(2).

No similar erroneous findings exist in Prescott's case for us to assess. Nor did *Nunes* hold that the state court engaged in an unreasonable factfinding process by failing to make a factual finding that was purportedly compelled by the materials submitted, as Prescott asks us to do here. Moreover, *Nunes* does not shed any light on when a court is required to make specific factual findings or hold an evidentiary hearing in assessing a claim of actual innocence.

Thus, Prescott has failed to demonstrate that the state court engaged in an unreasonable factfinding procedure within the scope of § 2254(d)(2) either by failing to make a finding of fact where it was required to do so, or by deciding that an evidentiary hearing was unnecessary. Because Prescott cannot show that the state court's denial of his habeas claim was unreasonable under § 2254(d), his petition must be denied.

## C

Even if Prescott could show that the state court made an unreasonable determination of fact under § 2254(d)(2) and obtain de novo review of his

18

freestanding federal actual innocence claim, he would need to demonstrate such a claim "is cognizable in a federal habeas corpus proceeding in the non-capital context." *Jones v. Taylor*, 763 F.3d 1242, 1246 (9th Cir. 2014). This is an open question. *Taylor v. Beard*, 811 F.3d 326, 334 (9th Cir. 2016) (en banc). But we need not resolve that issue here because Prescott's new evidence does not meet the "extraordinarily high" threshold showing of actual innocence that would be necessary to prevail on such a claim. *Herrera*, 506 U.S. at 417.

We have stated that, to the extent a federal actual innocence claim exists, a petitioner asserting such a claim need assert more than that insufficient evidence supported the petitioner's conviction. *Carriger v. Stewart*, 132 F.3d 463, 476–77 (9th Cir. 1997) (en banc). Instead, the "petitioner must demonstrate that 'in light of new evidence, it is more likely than not that no reasonable juror would have found [the] petitioner guilty beyond a reasonable doubt.'" *Jones*, 763 F.3d at 1247 (alteration in original) (quoting *House v. Bell*, 547 U.S. 518, 537 (2006)). "This new evidence must be reliable, and the reviewing court 'may consider how the timing of the submission and the likely credibility of the affiants bear on the probable reliability of that evidence.'" *Id.* (quoting *Schlup v. Delo*, 513 U.S. 298, 332 (1995)). Based on the "total record, the court must make a probabilistic determination about what reasonable, properly instructed jurors would do." *Id.* (quoting *House*, 547 U.S. at 538).

Our decision in *Carriger* illustrates the "extraordinarily high" standard a petitioner must meet to establish actual innocence. Carriger was convicted of murder. *Carriger*, 132 F.3d at 465. The prosecution's chief witness was a man named Robert Dunbar, who claimed that Carriger "had confessed the crime to him immediately after it happened." *Id.* at 466. But during Carriger's post-conviction proceedings, Dunbar's wife at the time of the murder testified that Dunbar told her that he had committed the crime. *Id.* at 467. During these proceedings, Dunbar recanted his trial testimony and confessed under oath to committing the murder. *Id.* at 467. The record also contained evidence that Dunbar had boasted to others about framing Carriger and that Dunbar knew details of the crime that only a participant would have known. *Id.* at 478–79. Complicating matters, Dunbar later recanted the confession he made at the post-conviction hearing and claimed his original trial testimony (accusing Carriger of the murder) was truthful. *Id.* at 467.

Sitting en banc, we rejected Carriger's actual innocence claim. *Id.* at 477. We held that while Carriger's new evidence "cast[] a vast shadow of doubt over the reliability of his conviction, nearly all of it serves only to undercut the evidence presented at trial, not affirmatively to prove [his] innocence." *Id.* We noted that Carriger had not introduced any other evidence "demonstrating he was elsewhere at the time of the murder, nor is there any new and reliable physical evidence, such as DNA, that would preclude any possibility of [his] guilt." *Id.* We further stated

that while Dunbar's confession was relevant, "we cannot completely ignore the contradictions in Dunbar's stories and his history of lying." *Id.*; *see also Smith v. Baldwin*, 510 F.3d 1127, 1130 (9th Cir. 2007) (en banc) (rejecting actual innocence "gateway" claim even where a key witness recanted his testimony).

Prescott's actual innocence claim does not come close to meeting this demanding standard. As noted in the previous section, the record contains extensive and compelling evidence supporting Prescott's conviction. For example, there was surveillance video placing Prescott at the apartment complex at the time of the shooting. Perry testified that she made eye contact with the shooter, provided police with description of the suspect that closely matched Prescott's appearance, and later specifically identified Prescott as the shooter. Additionally, the jury was presented with Prescott's letters he wrote while in jail, in which he apologized for taking a human life. While there were grounds to impeach Perry's testimony—Perry was not wearing her glasses, only briefly saw the shooter at a distance of about 25 feet, and had reasons to be biased against Prescott's gang— the jury was able to consider these arguments in evaluating her credibility at trial.

Further, Jones has made three inconsistent statements about the identity of the shooter. First, he told police during an initial interview that Prescott was the shooter. Second, in the 2011 letter, Jones claimed that Nickie Donald ("Poony") was the shooter. Third, in the 2012 letter, Jones asserted that he was the shooter.

In evaluating what a reasonable jury would think upon hearing Prescott's new evidence, we must account for the fact that Jones's statements would be impeached with these inconsistencies. *See Smith*, 510 F.3d at 1141 (considering a witness's inconsistent statements in evaluating a habeas petitioner's actual innocence claim). Further, the veracity of Jones's 2014 post-verdict declaration accepting responsibility is also open to question, given that Jones had been acquitted and could not be retried for the murder. *See id.* at 1141–42 (noting we are not required to assume that reasonable jurors would believe the testimony of someone "serving a life term in prison" and who thus "faces almost no consequences for lying to them"); *see also Jones*, 763 F.3d at 1248 (noting we can assess the impact of unreliable testimony on a hypothetical reasonable juror based on the record and are not necessarily bound by a trial court's credibility findings).

For these reasons, even assuming that a claim of actual innocence is cognizable, we find that Prescott has failed to meet his burden to show that he is entitled to federal habeas relief based on such a claim.

### IV

Prescott next claims that Plaine provided ineffective assistance of counsel "by failing to adequately investigate and establish before trial that" Jones "authored two letters confessing to the crime and exculpating Prescott." Claims of ineffective assistance of counsel are reviewed under the two-part test set forth in

22

*Strickland v. Washington*, 466 U.S. 668 (1984).  First, a petitioner must demonstrate that "counsel's representation fell below an objective standard of reasonableness."  *Id.* at 688.  Second, the petitioner must demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Id.* at 694.

The district court denied the claim on the ground that Prescott had failed to satisfy the first prong of the test.  "[T]he performance inquiry must be whether counsel's assistance was reasonable considering all the circumstances."  *Id.* at 688.  This inquiry is "highly deferential."  *Id.* at 689.  "Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy."  *Id.* (internal quotation marks and citation omitted).

"Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult.  The standards created by *Strickland* and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so."  *Richter*, 562 U.S. at 105 (internal quotation marks and citations omitted).  "When § 2254(d) applies, the question is not whether counsel's actions

were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.*

Prescott argues that it is well established that an attorney who fails to adequately investigate and introduce exculpatory evidence has rendered deficient performance. *See Avila v. Galaza*, 297 F.3d 911, 919 (9th Cir. 2002). Prescott contends that the failure to authenticate the letters "fell well below the reasonable standard of care." Prescott asserts that it was not a reasonable trial strategy to hope one of the co-defendants would testify so that the letters could be authenticated through their testimony, nor was it reasonable to fail to disclose the letters in the hope that Prescott and Jones would continue to be detained together so that Prescott might be able to learn more about Jones's litigation strategy.

Prescott also faults Plaine's selection of DeGarmo as a handwriting expert. Prescott argues that Plaine acted unreasonably by failing to educate himself regarding modern handwriting analysis standards, which he alleges would have put Plaine on notice that DeGarmo was unqualified and had failed to utilize those standards. Prescott also asserts that Plaine acted unreasonably by not making additional efforts to authenticate the letters after DeGarmo reported that analysis was inconclusive.

We agree with the district court that it was not unreasonable for the California Court of Appeal to reject this claim. *Prescott*, 2019 WL 6771826, at *8.

24

DeGarmo had 30 years of experience and had testified as an expert in over 300 cases. *Id.* This was a sufficient and reasonable basis for the state court to have found that DeGarmo was qualified, or at least that Plaine did not act deficiently in believing DeGarmo to be qualified and relying on DeGarmo's conclusions. *Id.* Plaine provided DeGarmo with sufficient samples of Jones's handwriting for DeGarmo to conduct his analysis, and after DeGarmo conducted that analysis, he reported that he could not reach a conclusion about whether Jones wrote the letters. Plaine did not have an obligation to seek out multiple experts until he found one that would give him the answer he was looking for. *See Crittenden v. Ayers*, 624 F.3d 943, 966 (9th Cir. 2010) ("Attorneys are entitled to rely on the opinions of properly selected, adequately informed and well-qualified experts.").

For these reasons, we hold that the California Court of Appeal could have reasonably found that Plaine did not render ineffective assistance of counsel. *See Richter*, 562 U.S. at 105. Thus, we need not address *Strickland*'s second prong regarding whether Prescott was prejudiced by his attorney's allegedly deficient performance. *Strickland*, 466 U.S. at 687.

## V

The district court's denial of Prescott's petition is **AFFIRMED**.[8]

---

[8] Prescott's unopposed motion for judicial notice (Dkt. No. 39) is granted.

*Prescott v. Santoro*, 19-17509

COLLINS, Circuit Judge, concurring in part and concurring in the judgment:

I concur in the court's opinion, except as to section III-C.  That section addresses an additional issue that, in view of our holding in section III-B, is unnecessary to decide.  I therefore express no view on it.